ETHAN W. BLEVINS, Mont. Bar No. 37415893
Email: eblevins@pacificlegal.org
Pacific Legal Foundation
839 W. 3600 S.
Bountiful, Utah 84010
Telephone: (206) 619-8944
Facsimile: (916) 419-7747

JEFFREY W. McCOY*, Cal. Bar No. 317377
Email: jmccoy@pacificlegal.org
DAMIEN M. SCHIFF*, Cal. Bar No. 235101
Email: dschiff@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111

JAMES M. MANLEY*, Ariz. Bar No. 031820
Email: jmanley@pacificlegal.org
Pacific Legal Foundation
3217 East Shea Blvd., No. 108
Phoenix, Arizona 85028
*Pro Hac Vice

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LARRY STEVEN WILKINS and JANE B. STANTON, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | No. 9:18-cv-00147-DLC-KLD <br><br> **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

EXHIBIT INDEX ................................................................................. v

INTRODUCTION ................................................................................. 1

STANDARD OF REVIEW ..................................................................... 5

SUMMARY OF ARGUMENT ................................................................ 6

ARGUMENT ....................................................................................... 7

I.    Plaintiffs' Properties Are Burdened by the 1962 Easement
      and Can Bring This Lawsuit ........................................................... 7

II.   The 1962 Easement Is Limited in Scope ......................................... 9

      A.    The 1962 Easement does not allow for use by the general public ........ 11

      B.    The easement is for ingress and egress to and from the
            Bitterroot National Forest ..................................................... 17

III.  The 1962 Easement Deeds Set Out the United States' Duty
      to Ensure Reasonable Use of the Easement .................................. 20

CONCLUSION ..................................................................................... 26

CERTIFICATE OF COMPLIANCE ........................................................ 28

CERTIFICATE OF SERVICE ............................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Stokes*,
    163 P.3d 1273 (Mont. 2007) ..................................................................21–22

*Associated Indem. Corp. v. Fairchild Indus., Inc.*,
    961 F.2d 32 (2d Cir. 1992) ...............................................................16

*Broadwater Dev., LLC v. Nelson*,
    219 P.3d 492 (Mont. 2009) ................................................................10

*Davis v. Hall*,
    280 P.3d 261 (Mont. 2012) ...............................................................18

*Earl v. Pavex, Corp.*,
    313 P.3d 154 (Mont. 2013) ...........................................................19–20

*Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*,
    249 F.3d 1132 (9th Cir. 2001) .............................................................6

*Friends of Panamint Valley v. Kempthorne*,
    499 F. Supp. 2d 1165 (E.D. Cal. 2007) ...............................................9

*Ganoung v. Stiles*,
    398 P.3d 282 (Mont. 2017) ...............................................................13

*Guthrie v. Hardy*,
    28 P.3d 467 (Mont. 2001) ...............................................13–14, 17, 20

*Hazel Green Ranch, LLC v. U.S. Dep't of the Interior*,
    490 F. App'x 880 (9th Cir. 2012) .......................................................8

*Henningsen v. Stromberg*,
    221 P.2d 438 (Mont. 1950) ...............................................................11

*Kuhlman v. Rivera*,
    701 P.2d 982 (Mont. 1985) ...............................................................15

*Mary J. Baker Revocable Tr. v. Cenex Harvest States, Cooperatives, Inc.*,
    164 P.3d 851 (Mont. 2007) ...........................................................10–13

*Mattson v. Montana Power Co.*,
  215 P.3d 675 (Mont. 2009) ....................................................9–10, 20

*O'Keefe v. Mustang Ranches HOA*,
  446 P.3d 509 (Mont. 2019) ..............................................................10

*Quarter Circle JP Ranch, LLC v. Jerde*,
  414 P.3d 1277 (Mont. 2018) ............................................................14

*Sampson v. Grooms*,
  748 P.2d 960 (Mont. 1988) ..............................................................19

*Strahan v. Bush*,
  773 P.2d 718 (Mont. 1989) ..............................................................17

*Teters v. Montana E. Pipe Line Co.*,
  159 P.2d 515 (Mont. 1945) ..............................................................19

*Thayer v. Hollinger*,
  296 P.3d 1183 (Mont. 2013) .......................................................17–18

*W. Radio Servs. Co. v. Espy*,
  79 F.3d 896 (9th Cir. 1996) .............................................................23

*Walsh v. United States*,
  672 F.2d 746 (9th Cir. 1982) .......................................................22–23

*Watson v. Dundas*,
  136 P.3d 973 (Mont. 2006) ..............................................................11

*Whitefish Congregation of Jehovah's Witnesses, Inc. v. Caltabiano*,
  449 P.3d 812 (Mont. 2019) ..............................................................10

*Wilkins v. United States*,
  598 U.S. 152 (2023) ...........................................................................1

*Wilson v. Brown*,
  897 S.W.2d 546 (Ark. 1995) .......................................................20–21

*Woods v. Shannon*,
  344 P.3d 413 (Mont. 2015) ...............................................12, 20, 26

**Statutes**

28 U.S.C. § 2409a(b) ..................................................................1

Mont. Code Ann. § 1-2-101 ........................................................8

Mont. Code Ann. § 1-4-102 ......................................................11

Mont. Code Ann. § 1-4-103 ......................................................19

Mont. Code Ann. § 28-2-905 ....................................................10

Mont. Code Ann. § 28-3-206 ....................................................11

Mont. Code Ann. § 70-16-202 ..................................................7–8

Mont. Code Ann. § 70-17-101 ..................................................18

Mont. Code Ann. § 70-17-103 ..................................................18

Mont. Code Ann. § 70-30-107 ....................................................7

Pub. L. No. 85-767, 72 Stat. 885 (Aug. 27, 1958)....................25

**Other Authorities**

4 Tiffany Real Prop. § 996 (3d ed.) ..........................................8

70 Fed. Reg. 68,264 (Nov. 9, 2005)...........................................3

Fed. R. Civ. P. 56 ......................................................................5

Restatement (Third) of Prop.: Servitudes § 4.13 (2000) ............21, 23, 26

Restatement (Third) of Prop.: Servitudes § 485 (1944) .........21

Restatement (Third) of Prop.: Servitudes ch. 4 (2000)...........10

U.S. Bureau of Labor Statistics, *CPI Inflation Calculator*,
   https://data.bls.gov/cgi-
   bin/cpicalc.pl?cost1=2200&year1=193705&year2=196205
   (last accessed Oct. 12, 2023) ...............................................16

**EXHIBIT INDEX**
**Exhibits to the Declaration of Jeffrey Wilson McCoy**

Ex. 1       Plaintiffs' Initial Disclosure Statement

Ex. 2       Plaintiffs' First Amended and Supplemental Initial Disclosures
            Statement

Ex. 3       Plaintiffs' Third Supplemental Initial Disclosures Statement

Ex. 4       Plaintiffs' Fourth Supplemental Initial Disclosures Statement

Ex. 5       United States' Supplemental Responses to Plaintiffs' First Set of
            Requests for Production of Documents

Ex. 6       United States' Response to Plaintiffs' Second Set of Requests for
            Production of Documents

Ex. 7       United States' Second Supplement to Response to Plaintiffs' Second
            Set of Requests for Production of Documents

Ex. 8       April 1939 right-of-way agreement between the Forest Service and
            John & Ruth Coultas, USA_Rev_0020–21, disclosed in response to
            Plaintiffs' First Set of Requests for Production of Documents

Ex. 9       June 1949 memorandum of agreement between the Forest Service and
            Jack Coultas, USA_Rev_0023–25, disclosed in response to Plaintiffs'
            First Set of Requests for Production of Documents

Ex. 10      The first of two deeds granting the easement at issue in this case,
            USA_Rev_0036–44, disclosed by the United States in response to
            Plaintiffs' First Set of Requests for Production of Documents

Ex. 11      Two May 1962 letters from then-Forest Supervisor Harold E.
            Andersen, USA_Rev_0057–60, disclosed by the United States in
            response to Plaintiffs' First Set of Requests for Production of
            Documents

Ex. 12      The second of two deeds granting the easement at issue in this case,
            USA_Rev_0101–106, disclosed by the United States in response to
            Plaintiffs' First Set of Requests for Production of Documents

Ex. 13      Deeds in Plaintiff Wilkins' chain of title, USA_Rev_0182–
            USA_Rev_0203, disclosed by the United States in response to
            Plaintiffs' First Set of Requests for Production of Documents

Ex. 14      Deeds in Plaintiff Stanton's chain of title, USA_Rev_0204–
            USA_Rev_0209, disclosed by the United States in response to
            Plaintiffs' First Set of Requests for Production of Documents

Ex. 15      Documents related to a 1994 phone cable project by U.S. West
            Communications near Robbins Gulch Road, USA_0235–48, disclosed
            in response to Plaintiffs' First Set of Requests for Production of
            Documents

Ex. 16      March 19, 2018, email from Darby District Ranger Eric Winthers to
            Marion Dial, USA_Rev_3178–79, disclosed by the United States in
            response to Plaintiffs' First Set of Requests for Production of
            Documents

Ex. 17      May 10, 1952, easement granted to the United States,
            USA_Rev_3394–96, disclosed by the United States in response to
            Plaintiffs' Second Set of Requests for Production of Documents

Ex. 18      October 15, 1952, easement granted to the United States,
            USA_Rev_3397–98, disclosed by the United States in response to
            Plaintiffs' Second Set of Requests for Production of Documents

Ex. 19      October 28, 1952, easement granted to the United States,
            USA_Rev_3399–3400, disclosed by the United States in response to
            Plaintiffs' Second Set of Requests for Production of Documents

Ex. 20      April 26, 1955, easement granted to the United States,
            USA_Rev_3494–96, disclosed by the United States in response to
            Plaintiffs' Second Set of Requests for Production of Documents

Ex. 21      Excerpted portions of the 1958 Forest Service Handbook as amended
            and revised through July 1, 1960, USA_Rev_3718–USA_Rev_4592,
            disclosed by the United States in response to Plaintiffs' Second Set of
            Requests for Production of Documents

Ex. 22    Excerpted portions of the Forest Service Handbook Section 5400 (1958), USA_Rev_4684–USA_Rev_4715, disclosed by the United States in response to Plaintiffs' Second Set of Requests for Production of Documents

Ex. 23    July 12, 2018, letter from Mr. Alan Campbell of the U.S. Department of Agriculture Office of the General Counsel, Wilkins015–17, disclosed in Plaintiffs' Initial Disclosures

Ex. 24    A 1937 easement granted by John and Ruth Coultas to Ravalli County, Wilkins935–37, disclosed in Plaintiffs' First Amended and Supplemental Initial Disclosures

Ex. 25    Declaration by Larry Steven Wilkins, disclosed in Plaintiffs' Third Supplemental Initial Disclosures

Ex. 26    Declaration by Marion Dial, disclosed in Plaintiffs' Fourth Supplemental Initial Disclosures

Ex. 27    Transcript of the August 12, 2019, F.R.C.P. 30(b)(6) Deposition of Jacob Pintok

Ex. 28    Transcript of the August 13, 2019, F.R.C.P. 30(b)(6) Deposition of Ryan Hughes

Ex. 29    Transcript of the August 13, 2019, F.R.C.P. 30(b)(6) Deposition of Stephanie Zacha

Ex. 30    Transcript of the August 12, 2019, Deposition of Eric Winthers

Ex. 31    Transcript of the October 25, 2019, Deposition of Charles Oliver

Ex. 32    Transcript of the August 15, 2019, Deposition of Jane Stanton

Ex. 33    Transcript of the August 15, 2019, Deposition of Larry Steven Wilkins, with the same redactions as made by counsel for the United States when filed in support of its original motion to dismiss

Ex. 34    pictures of signs placed on Robbins Gulch Road, USA_Rev_3190–3192, disclosed by the United States in response to Plaintiffs' Second Set of Requests for Production of Documents

Ex. 35      Portion of the Bitterroot National Forest Travel Management Planning Proposed Action Scoping Document, USA_Rev_3318–3355, disclosed by the United States in response to Plaintiffs' Second Set of Requests for Production of Documents

Ex. 36      Portion of the Bitterroot National Forest Travel Management Planning Project Summary Final Environmental Impact Statement, USA_Rev_0921–0971, disclosed by the United States in response to Plaintiffs' Second Set of Requests for Production of Documents

# INTRODUCTION

"Larry Steven Wilkins and Jane Stanton want[] quiet titles and a quiet road."

*Wilkins v. United States*, 598 U.S. 152, 155 (2023). In 2018, they filed this Quiet

Title Act suit to determine the scope of an easement the federal government holds

across their properties. ECF No. 1. After this Court granted the government's

motion to dismiss for lack of subject-matter jurisdiction, the Supreme Court

reversed and held that the Quiet Title Act's statute of limitations is a

nonjurisdictional claim processing rule. *Wilkins*, 598 U.S. at 165. On remand,

Mr. Wilkins and Mrs. Stanton request that this Court grant them summary

judgment and hold that the government's easement does not allow unrestricted use

by the general public over the entire width of the easement.[1]

"Wil" Wilkins is a veteran diagnosed with posttraumatic stress disorder.

Plaintiffs' Statement of Undisputed Facts in Support of Motion for Summary

Judgment (SoF) ¶ 36. In 2004, he purchased his home in Ravalli County, Montana,

near the boundary of the Bitterroot National Forest, on Robbins Gulch Road. SoF

¶ 2. Across that dirt lane lives Mrs. Stanton, who purchased her residence on

Robbins Gulch Road in 1991 with her husband. SoF ¶ 3. Since her husband's

---

[1] The Quiet Title Act provides that, following an adverse determination, the United States can retain possession or control of the property interest at issue if it pays just compensation. 28 U.S.C. § 2409a(b). Thus, in asking for summary judgment, plaintiffs are asking for a determination in their favor, and recognize that this Court cannot immediately enter judgment.

passing in 2013, she has lived alone at the house. *Id.* For their security and peace of mind, both need to know who can use Robbins Gulch Road and how.

In 1962, Plaintiffs' predecessors granted the easement at issue here in two separate deeds with substantially similar language (1962 Easement). SoF ¶ 6. The deeds convey to the United States a 60-foot easement "for a road as now constructed and in place and to be re-constructed, improved, used, operated, patrolled, and maintained and known as the Robbins Gulch road, Project Number 446." SoF ¶ 6. The easement differs in significant ways from the form easements in the Forest Service Handbook used by the agency at the time: whereas the form easements purport to grant to the United States an easement for "highway purposes," the 1962 deeds do not. SoF ¶¶ 22–25. The elimination of the highway purpose language from the Robbins Gulch Road easement deeds is consistent with the Forest Supervisor's cover letter that accompanied the proposed deeds. That letter explains that the "[p]urpose of the road" was for "timber harvest." SoF ¶ 17.

For many years, the Forest Service's management ensured that use of the easement did not unreasonably burden Mr. Wilkins's and Mrs. Stanton's properties. SoF ¶ 35. But in September 2006, the Forest Service commissioned a sign to be installed along Robbins Gulch Road that read "public access thru private lands." SoF ¶ 53. Since that time, expanded use of the easement has interfered with Mr. Wilkins's and Mrs. Stanton's use and enjoyment of their properties. SoF

2

¶¶ 37–38. For example, Mr. Wilkins, Mrs. Stanton, and their neighbors have had to deal with people trespassing, stealing their personal property, shooting at their houses, hunting both on and off the easement, and travelling at dangerous speeds on and around Robbins Gulch Road. SoF ¶¶ 39–43. In September 2019, someone travelling along the road shot Mr. Wilkins's cat. SoF ¶ 44. The recent, excessive use of the road and adjacent properties by the public and Forest Service permittees has even caused some neighbors to move. SoF ¶ 45.

Additionally, the increased use of the easement has caused erosion of the road that affects the adjacent properties. SoF ¶ 5. The road condition has caused sediment and silt to build up on the underlying properties and has washed out portions of those properties. SoF ¶ 60. Making things worse, the Forest Service's maintenance of the easement has in recent years become infrequent. SoF ¶ 35.

In 2007, the Bitterroot National Forest—as part of a Forest Service-wide policy to provide "clear identification of roads, trails, and areas for motor vehicle use on each National Forest," 70 Fed. Reg. 68,264, 68,264 (Nov. 9, 2005)—began a process to determine which Forest Service-managed roads can and should be open to the public. SoF ¶ 54. This travel management process was needed because the previous maps for the Bitterroot National Forest were "confusing" and made it "challenging for both members of the public and Forest Service personnel to easily determine where and when motorized use can legally occur." SoF ¶ 59. In

September 2007, a year after the Forest Service commissioned the "public access thru private lands" sign, it issued a proposed action scoping document about the travel management process. SoF ¶ 55. In that document, the Forest Service proposed no public use of Robbins Gulch Road. SoF ¶ 56.

The planning process took over eight years, culminating in the Forest Service's final decision in 2016. SoF ¶ 57. After originally proposing to allow no public use of the easement, SoF ¶ 56, the final travel plan decision allowed use of the easement by the public in summer and autumn, SoF ¶ 58. The Bitterroot's final travel plan decision only exacerbated the problems occurring on the easement. In December 2017, after the second autumn under the travel plan, the landowners and their neighbors met with Forest Service officials and requested that the Forest Service help address these problems. SoF ¶¶ 33–34. The Forest Service declined. SoF ¶ 34. Not only did the agency disagree that the easement is limited in scope, it also disclaimed its obligations under the easement to ensure reasonable use of the road. *Id.* It informed the property owners that it would manage the easement however it wished, and that it owed no duties to the owners of the servient estates. *Id.*; *see also* SoF ¶¶ 27–28.

In May 2018, as seasonal summer traffic was about to begin, counsel for Mr. Wilkins followed up with a letter to the United States Department of Agriculture Office of the General Counsel. SoF ¶ 26. In July 2018, the Office of

4

the General Counsel reiterated the Forest Service's position that the agency could allow whomever it wanted on the easement and that all management decisions were at the Forest Service's sole discretion. SoF ¶¶ 27–28.

A month after the response from the Office of the General Counsel, Mr. Wilkins and Mrs. Stanton filed this suit. They assert two claims for relief. First, they allege that the 1962 Easement does not grant an easement for general public use, but rather it grants the right to ingress and egress by the United States, its agencies (namely, the Forest Service), and those who hold specific permits or licenses issued by the United States. Complaint ¶¶ 30–34. Second, the 1962 Easement does not allow the government and those it invites on the easement to overburden the servient estate and instead requires the government to ensure reasonable use of its easement. Complaint ¶¶ 35–38.

## STANDARD OF REVIEW

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. If both parties file simultaneous cross-motions for summary judgment on the same claim, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in

opposition to both motions, before ruling on each of them. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## SUMMARY OF ARGUMENT

The Plaintiffs' properties are burdened by the easement and they have standing to bring this suit. Under Montana law, an owner of land bounded by a road or street is presumed to own to the center thereof. The applicable statute does not limit this presumption to public roads and, in fact, statutes in other parts of the same title use the term "road" to mean both public and private roads. Similarly, other states with similar presumptions apply the presumption equally to both private and public roads. Furthermore, in 1994 the United States acknowledged that Mr. Wilkins's predecessor and Mrs. Stanton own the fee title underlying the 1962 Easement when it granted U.S. West the right to occupy its Robbins Gulch Road easement for the purposes of building a communications line effective upon acquisition of an easement by U.S. West Communications from the fee owners of the land.

The 1962 Easement is limited in scope and does not allow the general public to use Robbins Gulch Road. The 1962 Easement does not grant a right of way for "highway purposes," unlike other easements granted to the federal government at the same time in Montana. Instead, the 1962 Easement was granted for a specific purpose—facilitating a timber harvest—and the scope of the easement is limited by

the purpose. Interpreting the 1962 Easement to allow use by the general public would burden the servient estate beyond what was contemplated at the time the easement was created, contrary to Montana law governing the interpretation of easements.

Furthermore, regardless of whether the government can allow the general public to use its easement, the easement's scope is limited by the Forest Service's duty to ensure that use of the easement does not overburden the servient estate. Under Montana law, the holder of an easement has the duty to keep it in repair, and the holder, and those it invites to use the easement, may not use the easement in a way that overburdens the servient estate.

This Court should grant summary judgment in favor of Plaintiffs.

## ARGUMENT

### I. Plaintiffs' Properties Are Burdened by the 1962 Easement and Can Bring This Lawsuit.

Under Montana law, "[a]n owner of land bounded by a road or street is presumed to own to the center thereof, but the contrary may be shown." Mont. Code Ann. § 70-16-202; *see* SoF ¶¶ 2–3 (description of Plaintiffs' properties). The text of the statute does not state that this presumption only applies to public roads. Indeed, elsewhere within Title 70 of the Montana code, the term "road" is used to describe both public and private roads. Mont. Code Ann. § 70-30-107 (describing procedures for using eminent domain to open "Private roads ..."). Interpreting the

word "road" in the statute to mean only "public road" adds words into the ordinance that are not there and contradicts how the word "road" is used elsewhere in Title 70, the title that governs property in Montana. Mont. Code Ann. § 1-2-101 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."). Thus, the presumption in Mont. Code Ann. § 70-16-202 applies equally to all roads, whether public or private.

Applying the presumption of ownership to both public and private roads is consistent with how the majority of other states have interpreted similar presumptions. 4 Tiffany Real Prop. § 996 n.35 (3d ed.). And even in those jurisdictions that only apply the fee title presumption to public roads, they apply a separate presumption that abutting landowners receive an easement in the road when property bound by that road is conveyed. *Id.* Thus, even if Montana courts adopted the minority interpretation, Plaintiffs here have disputed title sufficient to bring their claims for relief because the Quiet Title Act allows the holder of a competing easement to sue over the scope of an easement held by the United States. *See Hazel Green Ranch, LLC v. U.S. Dep't of the Interior*, 490 F. App'x 880, 881 (9th Cir. 2012).

This Court, however, does not need to decide the meaning of Mont. Code Ann. § 70-16-202 because a 1994 communications easement demonstrates that

Plaintiffs own fee title to the center of the road. That year, Mrs. Stanton, and the other residents of Robbins Gulch Road, granted an easement to U.S. West Communications to operate communications lines in "A 15' foot strip of land located *within* or adjacent to Robins [sic] Gulch Road ...." SoF ¶ 50 (emphasis added). The United States granted U.S. West the right to occupy its Robbins Gulch Road easement, but acknowledged that the permission would be "effective only upon acquisition by U.S. West Communications from the fee owners of a right-of-way easement for phoneline purposes." SoF ¶ 51. Mrs. Stanton, and Mr. Wilkins' predecessor-in-interest, were two of those fee owners.

Finally, even if Plaintiffs' property only underlies a portion of the 1962 Easement, all their claims are preserved. District Ranger Winthers has stated the Forest Service's position that the public is allowed to use all 60 feet of the easement. SoF ¶ 32. Therefore, Plaintiffs have an interest in ensuring the proper scope of any portion of the easement that burdens their land.

## II.     The 1962 Easement Is Limited in Scope.

Montana law governs the interpretation of the easement. Stipulation as to applicable law under Quiet Title Act, ECF No. 25; *Friends of Panamint Valley v. Kempthorne*, 499 F. Supp. 2d 1165, 1177 (E.D. Cal. 2007). As with contracts, in construing an easement a court "must give effect to the parties' mutual intention as it existed at the time of contracting, so far as the same is ascertainable and lawful."

*Mattson v. Montana Power Co.*, 215 P.3d 675, 690 (Mont. 2009) (citing

Restatement (Third) of Prop.: Servitudes ch. 4, Intro. Note for the proposition that

"the function of the law is to ascertain and give effect to the likely intentions and

legitimate expectations of the parties who create servitudes").

Generally, "when the terms of an agreement have been reduced to writing by

the parties, the writing is considered to contain all necessary terms" to interpret the

easement. *Whitefish Congregation of Jehovah's Witnesses, Inc. v. Caltabiano*, 449

P.3d 812, 819 (Mont. 2019) (citing *Broadwater Dev., LLC v. Nelson*, 219 P.3d

492, 500 (Mont. 2009); Mont. Code Ann. § 28-2-905). However, "if the terms of a

contract are ambiguous—reasonably subject to two different meanings—or

interpretation of the term requires resolving a question of fact regarding the intent,

courts may allow the parties to introduce extrinsic evidence to prove intent of the

parties." *Caltabiano*, 449 P.3d at 819. Pertinent extrinsic evidence includes "the

nature and character of the dominant and servient estates, the prior and subsequent

use of the properties, the character of the surrounding area, the nature and character

of any common plan of development for the area, and the consideration, if any,

paid for the easement." *O'Keefe v. Mustang Ranches HOA*, 446 P.3d 509, 520–21

(Mont. 2019).

Further, extrinsic evidence may be considered in easement disputes "for the

purpose of aiding the court in determining, as a preliminary matter, whether the

instrument contains an ambiguity." *Mary J. Baker Revocable Tr. v. Cenex Harvest States, Cooperatives, Inc.*, 164 P.3d 851, 866 (Mont. 2007). To that end, "objective evidence of 'the circumstances under which [the instrument] was made, including the situation of the subject of the instrument and of the parties to it,' may be shown and considered." *Id.* (quoting Mont. Code Ann. § 1-4-102) (substitutions retained). Objective evidence of ambiguity includes "custom or usage of the trade." *Id.* (quotation and citation omitted).

Finally, because the grantor usually chooses the words of the grant, courts will interpret a grant in favor of the grantee. But, as here, when the grantee chooses the words, any uncertainty is caused by the grantee and "[i]n cases of uncertainty 'the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.'" *Watson v. Dundas*, 136 P.3d 973, 977 (Mont. 2006) (quoting Mont. Code Ann. § 28-3-206). These rules are predicated upon the reasoning that when one party selects the words of a grant, that party is chargeable with the language used. *See Henningsen v. Stromberg*, 221 P.2d 438, 442 (Mont. 1950). Because the United States drafted the 1962 Easement, this Court should interpret any ambiguities in favor of Plaintiffs.

### A.    The 1962 Easement does not allow for use by the general public.

The two deeds comprising the 1962 Easement grant only a limited easement for use by specific individuals, not the general public. Specifically, the 1962

Easement grants the right to ingress and egress only to the United States, its agencies (namely, the Forest Service), and those who hold specific permits or licenses issued by the United States.

The deeds' language confirms that the easement is limited in scope. The easement's deeds grant "an easement and right-of-way for a road as now constructed and in place …." SoF ¶ 6. An easement granted for the use of a road does not usually allow for use by the general public, but rather specific individuals who have a relationship with the holder of the easement. *Woods v. Shannon*, 344 P.3d 413, 417 (Mont. 2015).

Further demonstrating the limited scope is the deeds' express reference to Forest Service Handbook (FSH) 5463.1. SoF ¶ 7. The form easements in FSH 5463.1 grant the United States an easement for "highway purposes," SoF ¶ 9, but the 1962 deeds state that the easements are "for a road as now constructed and in place ...." SoF ¶ 6. This inconsistency between the FSH language and the language of the 1962 Easement indicates that the 1962 Easement grants something different than an easement "for highway purposes."

The scope of the 1962 Easement is also demonstrated by comparing the language of the 1962 deeds with other deeds in the Bitterroot National Forest around the same time. These easements form "the circumstances under which [the instrument] was made," *Mary J. Baker Revocable Tr.*, 164 P.3d at 866–67, and

illustrate the "custom or usage" of the parties, *id.* at 866. The language in these easements can also help define the terms in the 1962 deeds.

The language of the 1962 Easement is narrower than that of other easements. Other easements in Montana granted to the United States around the same time are for a "state public highway." SoF ¶¶ 22–25. These easements specify that the grantor dedicates "the said right-of-way" "to the general public for all road and highway purposes ...." *Id.* These easements were also granted "without any reservations or exceptions whatsoever ... with respect to the construction, repair, maintenance, operation, or control" of the easement and released the government from any damages that resulted from operation or maintenance of the roads. SoF ¶¶ 22–25. The 1962 Easement does not contain the "public highway" language, the "without any reservations" language, nor does it release the government from any damages resulting from operation of the right-of-way. *See* SoF ¶ 6.

Extrinsic evidence helps clarify and define the limited scope of the 1962 Easement. To define the breadth and scope of a servitude of a general easement, a court considers "the situation of the property, surrounding circumstances, and historical use[.]" *Ganoung v. Stiles*, 398 P.3d 282, 286 (Mont. 2017). And "in the absence of clear specifications defining scope[,] no use may be made of a right-of-way different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent than was contemplated at the

time the easement was created." *Guthrie v. Hardy*, 28 P.3d 467, 475 (Mont. 2001);

*see also Quarter Circle JP Ranch, LLC v. Jerde*, 414 P.3d 1277, 1281 (Mont.

2018).

The clearest evidence of the intention of the parties comes from the

contemporaneous communications between the two sides. In a letter accompanying

the conveyance documents, then-Forest Supervisor Harold E. Andersen explained

the surrounding circumstances of the easement. The letter stated:

> We, of the U.S. Forest Service, have been negotiating for a road right-of-way through your property on Robbins Gulch with your son, Mr. John W. Coultas, and Mr. Lee Wildung. As we have reached an agreement with both parties, there now remains a need for signatures by you and your wife, Mrs. Ruth H. Coultas ....

SoF ¶ 17. The letter then states:

> I shall attempt to summarize some of the questions you may have.
>
> 1. *Purpose of the road – timber harvest*.
>
> 2. Construction – reconstruction of existing road.
>
> 3. Location – along existing Robbins Gulch Road.
>
> 4. Date of construction – probably fiscal year 1963.

*Id*. (emphasis added). The letter indicates that the easement was to further a

specific project, namely timber. The letter does not reflect an intent for the general

public to use the road.

The historic use of Robbins Gulch Road further demonstrates the limited scope of the easement. Prior to the 1962 Easement, the Forest Service had a license to use Robbins Gulch Road for "Forest Service use only." SoF ¶¶ 48–49. The road was also used by a rancher to access grazing lands on the forest. *See* SoF ¶ 48. But this license to use Robbins Gulch Road for "Forest Service use only" could be revoked at any time. *Cf. Kuhlman v. Rivera*, 701 P.2d 982, 984–85 (Mont. 1985) ("The use of a license is revocable at the will of the servient tenant.").

Thus, in 1962, the government sought a more secure right in the form of an easement so that it could complete a timber sale. SoF ¶¶ 13, 16. But the 1962 Easement does not reflect an intent to greatly expand the Forest Service's use of the road beyond how the agency had already been using it at the time. Indeed, the 1962 Easement grants "an easement and right-of-way for a road *as now constructed and in place* …." SoF ¶ 6 (emphasis added). And because the "[p]urpose of the road" was for a "timber harvest," SoF ¶ 17, the Forest Service did not need to expand its use of the Road beyond how it had used the road prior to 1962. Instead, with the 1962 Easement the Forest Service secured a property right and ensured that its access (and access for those with Forest Service permits) could no longer be revoked at will.

Finally, a separate easement granted by the Coultases further demonstrates the limited nature of the 1962 Easement. In May 1937, the Coultases conveyed to

Ravalli County an easement over a different portion of the same property for "the construction of a public or County highway." SoF ¶ 18. The Coultases used different language when they conveyed a highway easement to the County than when they conveyed the 1962 Easement. Therefore, the 1962 Easement grants something less than a public highway.

The consideration paid for the 1927 public highway easement compared to the consideration paid for the 1962 Easement further demonstrates the limited scope of the 1962 Easement. The May 1937 "public or County highway" easement comprised approximately 14.7796 acres and was conveyed to the County in exchange for $2,200. SoF ¶ 20. That is the equivalent of $4,613.89 in 1962 dollars.[2] The two deeds granting the 1962 Easement comprise approximately 7.892 acres and were granted to the United States in return for $474.20. SoF ¶ 12. The County paid about $312.18 in 1962 dollars per acre for the public highway easement. The United States paid just $60.09 per acre for the 1962 Easement. That the "public or County highway" was worth over 5 times the 1962 Easement indicates that the latter conveyed less than an easement for a public highway.

_____

[2]*See* U.S. Bureau of Labor Statistics, *CPI Inflation Calculator*, https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=2200&year1=193705&year2=196205 (last accessed Oct. 12, 2023). This Court can take judicial notice of inflation. *See also Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35–36 (2d Cir. 1992) (courts may take judicial notice of inflation).

The best reading of the words of the easement, and the extrinsic evidence, is that the 1962 Easement is limited in scope. On the other hand, reading the 1962 Easement to allow for use by the general public—as the government does—expands the scope beyond what is "reasonably necessary and convenient for the purpose for which it was created[.]" *Guthrie*, 28 P.3d at 475 (Mont. 2001) (quoting *Strahan v. Bush*, 773 P.2d 718, 720 (Mont. 1989)). The government's interpretation also contradicts the principle that "no use may be made of a right-of-way different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent than was contemplated at the time the easement was created." *Id.* The government may now want a right-of-way for the purpose of allowing the general public to access the National Forest, but that was not the purpose for which the 1962 Easement was created, and it was not what the government acquired in 1962.

This Court should grant summary judgment in favor of the Plaintiffs and hold that the 1962 Easement does not grant use to the general public.

**B.     The easement is for ingress and egress to and from the Bitterroot National Forest.**

Separate from who can use the road, the easement is unambiguous about how the road can be used. The deeds grant "an easement and right-of-way for a road as now constructed and in place ...." SoF ¶ 6. "An easement for a right of way is a servitude which may be imposed upon a parcel of land, which is the servient

tenement, in favor of another parcel of land, which is the dominant tenement."
*Thayer v. Hollinger*, 296 P.3d 1183, 1184 (Mont. 2013) (citing Mont. Code Ann.
§§ 70-17-101 and -103; *Davis v. Hall*, 280 P.3d 261 (Mont. 2012)).

The Forest Service, however, has stated that it can use the entire width of the
easement for any reason. SoF ¶ 32. Specifically, District Ranger Winthers told
Plaintiffs' neighbors that the 1962 Easement allows the Forest Service, and anyone
it invites to use the easement, to use all 60 feet of the easement. *Id.* Thus,
according to the Forest Service, those using the easement are not restricted to using
it to drive to and from the National Forest, but can park on the servient estate
within the 60 foot easement boundary.

The Forest Service's view of the easement contradicts the language of the
1962 Easement, burdens the servient estate beyond what was contemplated at the
time the easement was created, and expands the scope beyond the purpose of the
easement. As the words of the easement indicate, Plaintiffs' property is "traversed"
by Robbins Gulch Road for the purpose of accessing the National Forest. SoF ¶ 11;
*see also* SoF ¶ 27 (Forest Service counsel stating easement is for ingress and
egress). But those that park within the easement no longer traverse the servient
estate but rather occupy it.

Indeed, the 1962 Easement expressly limits when the government can
occupy the servient estate. The deeds allow for "reasonable rights of occupancy" of

the grantors' land "immediately adjacent to said right-of-way as may be necessary for the construction, maintenance, and repair of said road." SoF ¶ 11. Under the doctrine of *expressio unius est exclusio alterius*, the specific mention of a limited right to park for specific purposes excludes a general right to park. *Teters v. Montana E. Pipe Line Co.*, 159 P.2d 515, 517 (Mont. 1945); *see also* Mont. Code Ann. § 1-4-103.

Furthermore, a general right to park would create an "unreasonable burden upon the servient estate under the circumstances of this case." *Sampson v. Grooms*, 748 P.2d 960, 964 (Mont. 1988). In the past few years, parking has prevented residents from accessing their own property. SoF ¶ 47. The Forest Service response was to ignore these problems, and assert the right for any member of the public to park alongside Robbins Gulch Road for any reason. SoF ¶ 32. The Forest Service's interpretation is incompatible with the general principle that an easement holder cannot use an easement in a manner that unreasonably burdens the servient estate. *Sampson*, 748 P.2d at 963.

In sum, the purpose of the 1962 Easement was to give the United States access to the National Forest. Except for specific instances, i.e., maintaining the road, parking is not "reasonably convenient or necessary in order to fully enjoy the purposes for which the easement was granted ...." *Earl v. Pavex, Corp.*, 313 P.3d 154, 168 (Mont. 2013). On the other hand, allowing indiscriminate parking

"interfere[s] unreasonably" with the enjoyment of the servient estate. *Id.* Thus, this Court should hold that the 1962 Easement only allows parking for those purposes expressly stated in the terms of the deeds.

### III. The 1962 Easement Deeds Set Out the United States' Duty to Ensure Reasonable Use of the Easement.

Regardless of whether the government can allow the general public to use its easement, the easement's scope is still limited by the Forest Service's duty to ensure that use of the easement does not overburden the servient estate. *See Woods*, 344 P.3d at 417–18. Under Montana Law, "the holder of an easement 'has not only the right but the duty to keep it in repair,'" *id.* at 417 (quoting *Guthrie*, 28 P.3d at 477). As such, "[a]n easement may be extinguished when the holder of the easement uses the easement in a way that overburdens the servient estate or is incompatible with the nature of the easement." *Id.* In short, even if the 1962 Easement does not expressly limit who the government can invite to use the easement, the government may not invite use in a manner that overburdens the easement. *See id.* (duty to not overburden easement extends to those the easement holder invites).

The "requirement not to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment ... is an independent requirement on an easement holder's use of the easement." *Mattson*, 215 P.3d at 692; *see also id.* at 690 n.9 (quoting *Wilson v. Brown*, 897 S.W.2d 546, 550 (Ark. 1995), for the

proposition that "the holder of the dominant estate has a duty to use the property so as not to damage the owner of the servient estate."). This requirement is longstanding in Montana, *Anderson v. Stokes*, 163 P.3d 1273, 1276 (Mont. 2007) (holding that holder of an easement granted in 1949 has duty to keep the easement in repair), and was well established when the 1962 Easement was conveyed, *see* Restatement (Third) of Prop.: Servitudes § 4.13, reporter's note (2000) (citing Restatement of Prop. § 485 (1944) for the duty of repair).

Here, the government's duties are not just impliedly incorporated into the 1962 Easement under Montana law, they are expressly stated in the language of the deed. The 1962 Easement states that the easement is "to be reconstructed, improved, used, operated, patrolled, and maintained ...." SoF ¶ 6. This "to be" language differs from other easements granted to the federal government around the same time that were conveyed "without any reservations or exceptions" with respect to maintenance and also explicitly released the government from damages caused by operation and maintenance of the roads. SoF ¶¶ 22–25. If the 1962 Easement placed no duties on the federal government, the easement would not have been granted "to be" maintained; instead, the easement would have been granted "without any reservations" with respect to maintenance and the 1962 Easement would have released the government from damages resulting from operation and maintenance of Robbins Gulch Road.

The Montana Supreme Court has held that similar language as the language in the 1962 Easement places an affirmative duty on the easement holder to not unreasonably burden the servient estate. *See Anderson*, 163 P.3d at 1287–88. In *Anderson*, the easement at issue stated that "'the said grantors do hereby grant unto the said grantee, his heirs and assigns the perpetual right and easement to erect, construct, operate and *maintain* radio towers, guy wires and ground and feed wires and conduits' ...." *Id.* (emphasis in original). Based on this language, and the general rule in Montana that an easement holder has a duty to maintain the easement, the Court held that an easement holder was required to maintain its easement for radio towers and wires to ensure that the use of the easement did not injure the servient estate. *Id.*

The Ninth Circuit has also recognized that, under Montana law, the federal government has an affirmative duty to not unduly burden the servient estate. *Walsh v. United States*, 672 F.2d 746, 749 (9th Cir. 1982). In *Walsh*, the court considered whether a landowner could sue the United States for failing to maintain portions of a highway easement. In concluding that the suit could move forward, the Ninth Circuit stated that it was confident "that if the case should arise, Montana courts will hold that the private owner of an easement has the privilege and duty of repair and maintenance to prevent unreasonable interference with the uses of the servient

22

tenement ...." *Id.*; *see also* Restatement (Third) of Prop.: Servitudes § 4.13 (2000) (citing *Walsh*).

Defendant, however, rejects any obligation to ensure reasonable use of the easement. SoF ¶ 28. Consequently, problems on the road have increased, and those using the road have unreasonably interfered with Plaintiffs' enjoyment of their own properties. Mr. Wilkins, Mrs. Stanton, and their neighbors have had to deal with people trespassing, stealing their personal property, shooting at their houses, hunting both on and off the easement, and travelling at dangerous speeds on and around Robbins Gulch Road. SoF ¶¶ 37–44. Increased use of the easement has caused sediment and silt to build up on the underlying properties, resulting in the wash-out of portions of those properties. SoF ¶ 60. But despite this increasing burden on the servient estate, the Forest Service has decreased the amount of maintenance it conducts on the easement. SoF ¶¶ 34–35.

It is anticipated that the government will point to selected sections of the Forest Service Handbook to support its stated position that it has no obligation to ensure reasonable use of the easement. But the Forest Service Manual and Handbook are not substantive in nature and do not limit the Forest Service's authority to enter into agreements that deviate from the practices reflected in those documents. *See W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1996).

Indeed, as discussed above, much of the operative language of the 1962 deeds diverges from the form deeds prescribed by the Handbook. SoF ¶ 9.

Therefore, while the Handbook advises that the Forest Service should not enter into an agreement that requires it to maintain a road, that statement is not a binding restriction on the Forest Service's authority to enter into such agreement. SoF ¶ 21, FSH 5462.42, 5462.46 (1960). The Forest Service Handbook also expressly contemplates that the agency will conduct work for the "safe, convenient, and proper use of the road by the United States ...." *See* SoF ¶ 21, FSH 5462.43 (1960). That latter section is consistent with the duty to prevent unreasonable interference with the servient estate.

Furthermore, the guiding principle of the Forest Service Handbook is that the Forest Service should draft the deed "to assure that it meets all requirements of State laws." SoF ¶ 8, FSH 5463.1 (1958). It is the obligation of the Forest Service to ensure that the deed complies with state law and to make any necessary changes to reflect its intentions. SoF ¶ 8. Therefore, if the Forest Service did not want to reflect Montana's general rule that the owner of the easement has a duty to ensure reasonable use of the easement, it could have drafted the easement to reflect that desire as it did for other easements in Montana. Its failure to disclaim any duty in the 1962 Easement does not change the legitimate expectations of those who granted the easement.

Finally, the statute that authorized the purchase of the 1962 Easement further demonstrates Defendant's duty to maintain the easement. The easement was acquired as a forest development road or trail under Section 205 of the 1958 Highway Act. SoF ¶ 14.[3] Section 205 provides that "[f]unds available for forest development roads and trails shall be used by the Secretary of Agriculture to pay for the cost of construction and maintenance thereof." Pub. L. No. 85-767, § 205, 72 Stat. 885, 907 (Aug. 27, 1958). The Act used to acquire the 1962 Easement expressly contemplated the duty to maintain roads. This Court should reject any argument that the United States did not or could not agree to maintain the 1962 Easement.

In any event, even if the Forest Service violated its internal policies in acquiring the 1962 Easement, it does not change the words of the easement or its obligations under Montana state law. The Forest Service must ensure that its use, and the use of those it invites to use the easement, does not overburden the servient estate. And the Forest Service has options to comply with its obligations. It can place and enforce speed limits on the road. SoF ¶ 31. It can, like it has on other roads, place cameras to aid in investigating unlawful activity on the road. SoF ¶ 30.

---

[3] Many of these roads were timber access roads, further demonstrating the limited scope of the easement. Pub. L. No. 85-767, § 211, 72 Stat. 885, 909 (Aug. 27, 1958).

It can place gates to ensure that only those who are authorized to use the road have access to the road and revoke access to those that fail to act reasonably.[4]

And if the United States does not want to comply with its duties, it can always abandon the easement. Restatement (Third) of Prop.: Servitudes § 4.13, cmt. b (2000) (duty arising from a servitude generally ceases on abandonment). Indeed, if the government continues to allow use that overburdens the servient estates, then the easement will be extinguished. *Woods*, 344 P.3d at 417.

Defendant's position that it has no obligations to the servient estate is inconsistent with Montana law and the terms of the easement. This Court should grant summary judgment in favor of Plaintiffs and hold that Defendant has a duty to reasonably maintain Robbins Gulch Road until it abandons or otherwise extinguishes the easement.

## CONCLUSION

This Court should grant Plaintiffs' Motion for Summary Judgment and hold that the 1962 Easement does not grant an easement for general public use, but rather it grants the right to ingress and egress only to the United States, its agencies (namely, the Forest Service), and those who hold specific permits or licenses issued by the United States. Further, this Court should hold that the 1962 Easement

---

[4] Indeed, the Forest Service has contemplated revoking licenses in other contexts where its licensees have caused damage to nearby residents. SoF ¶ 52.

places an affirmative duty on the United States to ensure that those it invites to use its easement do not overburden the servient estates.

DATED: October 13, 2023.

Respectfully submitted,

ETHAN W. BLEVINS
JAMES M. MANLEY
JEFFREY W. McCOY
DAMIEN M. SCHIFF

/s/ Ethan W. Blevins
ETHAN W. BLEVINS

/s/ Jeffrey W. McCoy
JEFFREY W. McCOY

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 6,496 words, excluding the caption, certificates of service and compliance, tables of contents and authorities, and exhibit index.

DATED this 13th day of October, 2023.

s/ Ethan W. Blevins
ETHAN W. BLEVINS

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2023, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Ethan W. Blevins
ETHAN W. BLEVINS