MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667
FAX: (406) 657-6058
Email Address: mark.smith3@usdoj.gov

JOHN M. NEWMAN
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
101 E. Front Street, Suite 401
Missoula, MT 59802
Phone: (406) 829-3336
Fax: (406) 542-1476
Email: john.newman@usdoj.gov

Attorneys for Defendant
United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| LARRY STEVEN WILKINS and JANE B. STANTON, | CV 18-147-M-DLC |
|---|---|
| Plaintiffs, | UNITED STATES' COMBINED BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

INTRODUCTION ...................................................................................... 1

BACKGROUND ......................................................................................... 2

LEGAL STANDARD .................................................................................. 2

ARGUMENT ............................................................................................... 3

    I.    Plaintiffs' claims are time barred. .................................................. 3

        A.    Forest Service maps and public understanding
            of those maps. ........................................................... 5

        B.    Forest Service closure of Robbins Gulch Road. .................. 12

    II.    Plaintiffs' claims fail on the merits—the Robbins
        Gulch Road easement provides public access and
        imposes no affirmative duties on the government. ........................ 16

        A.    The 1962 easement does not explicitly exclude
            public access, but instead allows road use by
            Forest Service "assigns." ........................................... 17

        B.    The FSH and federal regulations establish
            public access. ........................................................... 19

        C.    Other easements using same language created
            public roads. ............................................................ 21

        D.    Even if it was considered ambiguous, extrinsic
            evidence shows 1962 easement included public
            use. ......................................................................... 24

            1.    Public access occurred on Robbins Gulch
                Road before and after the 1962
                easements. ....................................................... 25

i

2. Harold Andersen's letter did not limit
road use...........................................................................26

III.    The 1962 easement does not impose maintenance
and/or patrol obligations on the Forest Service. ...........................28

CONCLUSION...............................................................................................31

CERTIFICATE OF COMPLIANCE..................................................................32

# TABLE OF AUTHORITIES

Cases                                                                    Pages(s)

*Beasley v. U.S.*,
    2013 WL 1832653 (E.D. Wash. May 1, 2013)................................15

*Cal-Neva Land & Timber Inc. v. U.S.*,
    70 F. Supp. 2d 1151 (D. Or. 1999) ........................................... 18, 19

*City of Missoula v. Mix*,
    214 P.2d 212 (Mont. 1950)................................................ 17, 18, 19

*D.C. Transit System, Inc. v. U.S.*,
    531 F. Supp. 808 (D.D.C. 1982)........................................... 3, 4, 13

*DeHaven v. Hall*,
    753 N.W.2d 429 (S.D. 2008)..................................................28

*Demetria Sifuentes v. U.S.*,
    168 F.2d 264 (1st Cir. 1948)................................................ 30, 31

*Fruth Farms v. Vill. of Holgate*,
    442 F. Supp. 2d 470 (N.D. Ohio 2006) ................................. 18, 19

*Guthrie v. Hardy*,
    28 P.3d 467 (Mont. 2001)......................................................16

*Hein v. U.S.*,
    2017 WL 9324517 (D. Mont. July 14, 2017)..................................3

*Kingman Reef Atoll Investments, L.L.C. v. U.S.*,
    541 F.3d 1189 (9th Cir. 2008) ........................................... 3, 4, 13

*Kingman Reef Atoll Investments, L.L.C. v. U.S.*,
    545 F. Supp. 2d 1103 (D. Haw. 2007).......................................13

*Koeppen v. Bolich*,
   79 P.3d 1100 (Mont. 2003) ...............................................................28

*Kootenai Canyon Ranch, Inc. v. U.S. Forest Serv.*,
   338 F. Supp. 2d 1129 (D. Mont. 2004) ...........................................4, 5

*Laden v. Atkeson*,
   116 P.2d 881 (Mont. 1941) ........................................................ 28, 29

*Lolo Minerals, LLC v. Phil Cascio, Jr.*,
   2015 WL 12592790 (D. Mont. May 28, 2015) .............................24

*Lombard v. U.S.*,
   194 F.3d 305 (1st Cir. 1999) ..........................................................6, 8

*McClurg v. Flathead Cnty. Comm'rs*,
   610 P.2d 1153 (Mont. 1980) ...........................................................11

*N. Dakota, ex rel. Wrigley v. U.S.*,
   31 F.4th 1032 (8th Cir. 2022) ...........................................................8

*N.W. Motorcycle Ass'n v. U.S. Dept. of Agric.*,
   18 F.3d 1468 (9th Cir. 1994) .............................................................2

*Park Cnty., Mont. v. U.S.*,
   626 F.2d 718 (9th Cir. 1980) ...........................................................15

*Rasmussen v. Fowler*,
   800 P.2d 1053 (Mont. 1990) ...........................................................11

*Rexam Bev. Can Co. v. Bolger*,
   620 F.3d 718 (7th Cir. 2010) ...........................................................23

*Ricci v. DeStefano*,
   557 U.S. 557 (2009) ...........................................................................2

*Robinson v. U.S.*,
   586 F.3d 683 (9th Cir. 2009) ..................................................... 13, 14

*Shultz v. Dept. of Army, U.S.*,
　　886 F.2d 1157 (9th Cir. 1989) ....................................... 3, 5, 6, 7, 14

*Skranak v. Castenada*,
　　425 F.3d 1213 (9th Cir. 2005) .......................................15

*Spirit Lake Tribe v. North Dakota*,
　　2000 WL 33339676 (D.N.D. Jan. 24, 2000) ....................................8

*State of Cal. ex rel. State Land Commn. v. Yuba Goldfields, Inc.*,
　　752 F.2d 393 (9th Cir. 1985) .......................................5, 6

*State of Nevada v. U.S.*,
　　731 F.2d 633 (9th Cir. 1984) .......................................4, 14

*Strahan v. Bush*,
　　773 P.2d 718 (Mont. 1989).................................... 24, 25, 26

*Van Hook v. Jennings*,
　　983 P.2d 995 (Mont. 1999)...............................................16

*Walker v. Boozer*,
　　95 P.3d 69 (Idaho 2004) ...............................................28

*Wilkins v. U.S.*,
　　598 U.S. 152 (2023)...............................................15

*Wilkins v. U.S.*,
　　2021 WL 4200563 (9th Cir. Sept. 15, 2021) ........................ 1, 3, 5, 14, 15, 16

Statutes

28 U.S.C. § 2409a(g) ................................... 1, 3, 14, 15, 16
Mont. Code Ann. § 70-17-106...........................................16
Mont. Code Ann. § 70-20-202...........................................24

Rules

Fed. R. Civ. P. 56...........................................1, 2

## Regulations

36 C.F.R. 212.9(g) ................................................................................. 21, 22, 23

## Other Authorities

25 Am. Jur. 2d Easements and Licenses § 72 ....................................................28
28A C.J.S. Easements § 227 ..............................................................................28
Restatement (Third) of Property (Servitudes) § 4.13 (2000) ...........................28

# INTRODUCTION

Two and a half years ago, this Court ruled that Plaintiffs' claims "accrued, at the latest, on May 3, 2006" and were therefore barred by the Quiet Title Act's 12-year statute of limitations, 28 U.S.C. § 2409a(g).[1] Doc. 59 at 24. A trip to the U.S. Supreme Court and back demonstrated that expiration of the limitations period did not deprive the Court of subject matter jurisdiction, but that doesn't disturb the underlying conclusion—on this record, Plaintiffs claims are time barred. The uncontroverted evidence is the same as before, the only difference is the applicable legal standard. Pursuant to Fed. R. Civ. P. 56, the United States is entitled to judgment as a matter of law.

However, even if Plaintiffs' claims could proceed and the Court reached "the question on the merits of whether the 1962 easement is limited in scope," the government is still entitled to summary judgment. Doc. 59 at 20 (cleaned up). Nothing in the easement prohibits public access, and other similar easements of the same vintage provide public access—two conclusions supported by extrinsic evidence. Finally, the 1962 easement reserved for the Forest Service the rights of

---

[1] Notably, the Ninth Circuit agrees. *See Wilkins v. U.S.*, 2021 WL 4200563, at *2 (9th Cir. Sept. 15, 2021) (unpublished).

maintenance and patrol, it did not impose maintenance or patrol duties as conceived by Plaintiffs.

## BACKGROUND

The Court is familiar with the factual and procedural background underlying this case, including Plaintiffs' appeal of the Court's orders dismissing the case and declining to amend the previous judgment. Docs. 59, 67. Facts supporting the government's brief are outlined in the United States' Statement of Undisputed Facts ("SUF") and referenced below as pertinent.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment should be granted. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *N.W. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citations omitted).

# ARGUMENT

## I. Plaintiffs' claims are time barred.

Plaintiffs filed this action on August 23, 2018. Over 12 years earlier, in May 2006, the Forest Service closed the road due to flooding, restricting access to all but landowners, permittees, and agency personnel. In the decades preceding that closure, the agency time and again depicted the road on Forest Service maps as Road No. 446, unrestricted and open to public use. These actions triggered the statute of limitations, which thus expired in May 2018 at the latest. Doc. 59 at 24; *Wilkins*, 2021 WL 4200563, at *2. Consequently, Plaintiffs' claims are time barred and the United States is entitled to summary judgment.

Quiet Title Act ("QTA") claims must be brought within 12 years of "the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g). The phrase "should have known" in § 2409a(g) imparts a reasonableness test. *Shultz v. Dept. of Army, U.S.*, 886 F.2d 1157, 1160 (9th Cir. 1989). "Thus, knowledge of the claim's full contours is not required; all that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Hein v. U.S.*, 2017 WL 9324517, at *4 (D. Mont. July 14, 2017) (cleaned up), *report and recommendation adopted*, 2017 WL 4269956 (D. Mont. Sept. 26, 2017), *aff'd*, 783 Fed. Appx. 650 (9th Cir.

2019) (unpublished); *see also Kingman Reef Atoll Investments, L.L.C. v. U.S.*, 541 F.3d 1189, 1198 (9th Cir. 2008) ("the QTA limitations period accrues as soon as the United States makes a claim that creates even a cloud on a plaintiff's ownership interest") (cleaned up); *D.C. Transit System, Inc. v. U.S.*, 531 F. Supp. 808, 812 (D.D.C. 1982), *aff'd*, 790 F.2d 964 (D.C. Cir. 1986) (any action sufficient to "excite attention and put the party on guard" provides adequate notice). "The existence of one uncontroverted instance of notice suffices to trigger the limitations period." *State of Nevada v. U.S.*, 731 F.2d 633, 635 (9th Cir. 1984).

In a QTA case where the government possesses an easement over a privately-owned servient estate, "[t]he Court must determine whether and when the Plaintiff or its predecessors in interest knew or should have known of the United States' belief that its easement allowed [certain uses]." *Kootenai Canyon Ranch, Inc. v. U.S. Forest Serv.*, 338 F. Supp. 2d 1129, 1133 (D. Mont. 2004). In *Kootenai Canyon Ranch*, the plaintiff filed suit in August 2003 seeking to clarify the scope of a Forest Service easement over her property. *Id*. at 1131–32. The easement contained a Forest Service road that accessed a trailhead with stock facilities at the western end. *Id*. The plaintiff alleged the easement only contemplated a road, and the trailhead and stock facilities were "not permitted under the express terms of the easement." *Id*. at 1132. This Court determined that

the QTA's statute of limitations barred the plaintiff's claims because the Forest Service installed and maintained the trailhead and facilities beginning in the 1970's, and "a reasonable landowner would have been on notice for the past 30 years of the expansive use of the easement." *Id*. at 1134.

In this case, long before August 23, 2006 (12 years before they filed their Complaint), Plaintiffs and their predecessors in interest had abundant notice and reason to know that the Forest Service viewed Robbins Gulch Road as providing public access to National Forest lands. In particular, Forest Service maps depicting Robbins Gulch Road No. 446 as open to public (and the observed public use prompted by those maps) and the agency's May 2006 temporary closure of the road were such that "a reasonable landowner would have been aware of the Forest Service's adverse claim prior to August 23, 2006." Doc. 59 at 23; *see also Wilkins*, 2021 WL 4200563, at *2. There is no genuine dispute regarding these facts, the question is purely one of legal import—and the Court already answered the question in its May 2020 order. The statute has run and the United States is entitled to summary judgment.

### A. Forest Service maps and public understanding of those maps.

The test for accrual of a QTA claim is an objective one: whether a "reasonable landowner" would have been alerted to an adverse interest in the land.

*Shultz*, 886 F.2d at 1160; *State of Cal. ex rel. State Land Commn. v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir. 1985).  The statute of limitations does not require actual knowledge of the government's claim.  *Lombard v. U.S.*, 194 F.3d 305, 309 (1st Cir. 1999).  "If other facts known twelve or more years before this action was brought would have prompted a reasonable landowner to make further inquiries, which in turn would have led to knowledge of the government's claim, then the statute bars the owner because he 'should have known' of the government's claim."  *Id*.

From as early as 1950, Robbins Gulch Road has been depicted on numerous official Forest Service maps available to the public.  SUF, ¶ 1.  Of these maps, all but the 1950 version designate the road—including the portion that travels adjacent to Plaintiffs' parcels—as "446."  SUF, ¶ 2.  This number designates Robbins Gulch Road as a part of the National Forest road system.  SUF, ¶ 3.

Indeed, the 2005 Bitterroot National Forest map included the following invitation from then-Forest Supervisor David Bull:

**Welcome to The Bitterroot National Forest**

This spectacular 1.6 million acre forest in western Montana and Idaho is a priceless national treasure, and has long been home to the Bitterroot Salish, Kootenai, and Nez Perce people.

Its glaciated mountains, back-country lakes, glistening streams, and noble wildernesses provide numerous opportunities for recreation, wildlife, fisheries, education, timber, minerals, and grazing.

We welcome you to visit and explore your precious public lands.

David T. Bull, Forest Supervisor

SUF, ¶ 4. The clear message to the public was that Robbins Gulch Road—labeled an improved dirt road without any restrictions on use—provided access to the National Forest. SUF, ¶ 5.

The above-referenced maps have all been publicly available for decades. Indeed, Plaintiff Wilkins testified that he has seen "historical road maps" of precisely this type, even referring to them as "public information." SUF, ¶ 6. The public relies upon these maps in determining that Robbins Gulch Road No. 446, including the portion that travels adjacent to Plaintiffs' parcels, is an established route of public access.

Under the QTA, all that is required for accrual of Plaintiffs' claims is some notice that would put a "reasonable landowner" on notice of the government's adverse interest. *Shultz*, 886 F.2d at 1160. Here, maps distributed to the public

showed Robbins Gulch Road as part of the National Forest road system with the specific purpose of public access and recreation. These maps depicting a "public access" or "Forest Service" road in Robbins Gulch—maps likely seen by Plaintiffs and known to exist—triggered accrual under the QTA because a reasonable owner would have been on notice of the claim. *See, e.g., Spirit Lake Tribe v. North Dakota*, 2000 WL 33339676, at *5 (D.N.D. Jan. 24, 2000), *aff'd in part, vacated in part on other grounds*, 262 F.3d 732 (8th Cir. 2001) (maps produced by the United States between 1876 and 1974 depicting the government's claimed extent of a reservation triggered the QTA limitations period); *N. Dakota, ex rel. Wrigley v. U.S.*, 31 F.4th 1032, 1040–41 (8th Cir. 2022) (maps published with travel plans and public notices triggered statute). The statute of limitations does not require actual knowledge of the government's claim. *Lombard*, 194 F.3d at 309.

Not only have official government maps depicted Robbins Gulch Road as a route of public access, but the public's pervasive use of the road demonstrates the common understanding that the road provided public access. SUF, ¶ 7. Indeed, if Plaintiffs or their predecessors had simply asked any member of the public why they were using the road (i.e., a "further inquiry"), they would have immediately gained "knowledge of the government's claim." The public knew, and would have

8

told Plaintiffs, that Robbins Gulch Road No. 446 was and is a public road, managed and administered by the Forest Service.

Plaintiffs' predecessors in interest likewise have understood Robbins Gulch Road to provide public access to the National Forest. David Coultas, whose family owned the property subdivided to create Plaintiffs' parcels and whose grandparents sold the subject easement to the Forest Service, stated that "[t]he easement for Robbins Gulch Road is intended to allow regular members of the public to use the road, without having to ask anyone for permission." SUF, ¶ 8. Coultas's memory of public use dates back to the 1950's. SUF, ¶ 9.

Lori Conner—from whose grandfather the nearby town of Conner takes its name, and who owned Plaintiff Wilkins's parcel from 1980 to 1993—stated she was aware at all times during her ownership of the property, and in her decades of using Robbins Gulch Road before then, that the road provided unrestricted public access. SUF, ¶ 10. Pointedly, Conner noted she and her family "never had to ask anyone for permission [to use Robbins Gulch Road], since it was a public road," and "would see other public users on the road and forest." SUF, ¶ 11. These and Coultas's statements are uncontroverted and unequivocal—Plaintiffs' predecessors in interest knew, not just "should have known," that Robbins Gulch Road was public far earlier than August 23, 2006.

Indeed, Plaintiffs themselves understood Robbins Gulch Road to provide public access to the National Forest. Plaintiff Wilkins testified at his deposition that when he bought his property in 2004, a representative of his immediate predecessor in interest told him Robbins Gulch Road was "an old Forest Service Road [that] gets occasional use," and that "[i]n the fall of a year [he] might have some hunters go up [there]." SUF, ¶ 12. He noted gradual increases in public use as the years progressed. SUF, ¶ 13. He acknowledged public use prior to his purchasing the property "because they were using it when [he] bought it." SUF, ¶ 14. He has never been asked by a member of the public for permission to use Robbins Gulch Road. SUF, ¶ 15. A reasonable landowner would understand this use pattern—and a lack of agency action to "correct" it—as indicia of unrestricted public access.

Likewise, Plaintiff Stanton testified that she and her husband were aware of public use of Robbins Gulch Road, including by party-going teenagers and hunters, at the time they bought their property. SUF, ¶ 16. If she had problems with hunters utilizing the public access, she "would call the local Forest Service people," not the sheriff. SUF, ¶ 17. As far back as the 1990's, she recalled a Forest Service employee coming through Robbins Gulch Road to perform maintenance on an annual basis. SUF, ¶ 18. Montana courts have found actual

notice of a government right when, as here: (1) government authorities maintain a way, and (2) non-permissive public use is continuous and long term, i.e., thirty to fifty years. *See, e.g., McClurg v. Flathead Cnty. Comm'rs*, 610 P.2d 1153, 1156 (Mont. 1980); *Rasmussen v. Fowler*, 800 P.2d 1053, 1056 (Mont. 1990). Because the Forest Service maintained Robbins Gulch Road and the public used it uncontested for at least seventy years (thirty years during Plaintiff Stanton's ownership), Plaintiffs' knowledge of the adverse public use has been established.

Like Wilkins, no member of the public has ever asked Stanton's permission to use Robbins Gulch Road. SUF, ¶ 19. Indeed, despite filing this lawsuit to the contrary, Plaintiff Stanton "[does not] want to keep people out" of Robbins Gulch Road or the National Forest lands it accesses—she simply "want[s] it to remain tranquil." SUF, ¶ 20. Stanton has had direct knowledge that Robbins Gulch Road provided public access since the 1990's, and to this day has no desire to change it.

Prompted by decades of publicly issued National Forest maps depicting Robbins Gulch Road as an unrestricted Forest Service road, the recreating public has openly used the road to access public lands for as far back as local residents can remember. Plaintiffs' predecessors in interest knew this, and even facilitated and encouraged public use. Plaintiffs likewise knew when they bought their

respective properties that the public used the road regularly. The bottom line is Robbins Gulch Road has always been a public road.

**B.  Forest Service closure of Robbins Gulch Road.**

In May 2006, wet conditions made Robbins Gulch Road muddy, dangerous to motorists, and, with increased sediment flowing into the East Fork of the Bitterroot River, bad for the environment. SUF, ¶ 21. Consequently, the Forest Service instituted a temporary closure order for all of Robbins Gulch Road, from the beginning of the road at its intersection with Highway 93 in the west to its intersection with National Forest Service Road No. 5612A (within the National Forest boundary) in the east. SUF, ¶ 22.

The Forest Service enforced the closure order by erecting physical barriers across Robbins Gulch Road at the junction of Robbins Gulch Road and Highway 93. SUF, ¶ 23. The agency also posted "Road Closed" signs, and posted a copy of the temporary closure order on the barriers. SUF, ¶ 24. Under the terms of the order, public motorists were prohibited from using the road, and even residents needed to secure a special permit from the Forest Service in order to access their own homes. SUF, ¶ 25.

The same maps discussed above included information regarding the nature and purposes of road closures:

> EROSION CONTROL - Some route restrictions are necessary to protect travel surfaces during saturated soil conditions. Soft roads and trails, particularly in the spring, are highly susceptible to rutting and erosion. The restrictions not only reduce maintenance costs, but protect water quality and aquatic habitats by minimizing sediment production.

\*　　　　\*　　　　\*

> TEMPORARY CLOSURES OR RESTRICTIONS - Temporary closures or restrictions may be established when use would behazardous or would damage resources. Information about closures or restrictions is available at Bitterroot National Forest offices. When temporary closures or restrictions are in effect, the areas and routes will be posted on the ground.
> When a designated route becomes impassible due to natural causes such as snowdrifts, mud, and earth slides, the route will be considered closed to motorized vehicles that cannot negotiate the obstacle.

SUF, ¶ 26.

Plaintiffs and their predecessors did not need to know the full contours of the government's claim, they just needed reasonable awareness that the government claimed some interest adverse to the position they currently assert. *D.C. Transit Sys. Inc.*, 531 F. Supp. at 812. The government's use need not even be facially valid to trigger accrual. *Kingman Reef Atoll Investments, L.L.C. v. U.S.*, 545 F. Supp. 2d 1103, 1111 (D. Haw. 2007), *aff'd,* 541 F.3d 1189 (9th Cir. 2008). All that is needed is notice of an "interest that raises questions that may affect the

claim of title and pose problems in the future." *Robinson v. U.S.*, 586 F.3d 683, 687 (9th Cir. 2009) (cleaned up).

Here, any reasonable landowner "should have known" as of May 3, 2006 that the United States: (a) asserted dominion over Robbins Gulch Road so as to limit access to it, and (b) by expressly excluding the public during this time, viewed the road as otherwise open to the public. *See* 28 U.S.C. § 2409a(g); *Shultz*, 886 F.2d at 1160; Doc. 59 at 24; *see also* SUF, ¶ 25. The closure order itself, the physical barriers the Forest Service placed across the road, and the "road closed" signs all plainly demonstrated that the United States considered Robbins Gulch Road a public access point. Moreover, the closure represents an "uncontroverted instance of notice"—Plaintiffs do not dispute that the Forest Service closed the entirety of Robbins Gulch Road to the public in May 2006, thereby fully asserting its claim related to the road. *Nevada*, 731 F.2d at 635. The closure was directly antithetical to the limited use rights Plaintiffs now claim were conferred in the 1962 easements. *See* Doc. 1, ¶ 34. The message was all-too-clear to Plaintiffs in May 2006—Robbins Gulch Road was open to the public, except for when the Forest Service decided otherwise. The closure order was legally sufficient to trigger the limitations period. *See, e.g.*, Doc. 59 at 24; *Wilkins*, 2021 WL 4200563, at *2 ("the government's temporary closure of the road in 2006 was consistent with

14

this understanding" that Robbins Gulch Road provided public access); *Skranak v. Castenada*, 425 F.3d 1213, 1217 (9th Cir. 2005); *Park Cnty., Mont. v. U.S.*, 626 F.2d 718, 719–21 (9th Cir. 1980) (holding that signs and barriers provided constructive notice of the government's claim and "alerted [the plaintiffs] to make reasonable inquiry as to the" extent of the claim); *Beasley v. U.S.*, 2013 WL 1832653, *5 (E.D. Wash. May 1, 2013) (beyond easement language, road closure "would have provided a landowner with actual notice of the claim of the United States regarding the scope of the Easement, and in particular, an Easement over land held in fee by the landowner").

Despite actual knowledge of the May 3, 2006 closure order and the government's claim it represents, Plaintiffs and their predecessors never made any "reasonable inquiry," never complained about public use of Robbins Gulch Road, and never disputed the Forest Service's exertion of control. As of May 3, 2006, Plaintiffs were on actual notice that the agency considered Robbins Gulch Road a public road, yet they failed to file a QTA claim within the twelve-year limitations period. While this failure doesn't preclude the Court's jurisdiction, it nevertheless remains a defense under the statute and is fatal to Plaintiffs' claims—all of them. *See Wilkins v. U.S.*, 598 U.S. 152 (2023) (holding that § 2409a(g) "is a nonjurisdictional claims-processing rule," not invalidating that rule); *Wilkins*, 2021

WL 4200563, at *2 ("[a]ll of [Plaintiffs'] claims—despite being organized as two separate causes of action in the complaint—were ultimately premised on the public's alleged unauthorized use of the road [and] therefore accrued at the same time"). Pursuant to 28 U.S.C. § 2409a(g), Plaintiffs' claims are time barred and the United States is entitled to summary judgment.

## II. Plaintiffs' claims fail on the merits—the Robbins Gulch Road easement provides public access and imposes no affirmative duties on the government.

Plaintiffs incorrectly contend the terms of the 1962 easements define the permissible scope of use and exclude public access. Doc. 81 at 18–26.

Generally, "where the creating words of a deed make the scope and the location of an easement perfectly clear, there is no need for further inquiry." *Guthrie v. Hardy*, 28 P.3d 467, ¶ 46 (Mont. 2001). "Where an easement is specific in nature, the breadth and scope of the easement are strictly determined by the actual terms of the grant." *Id*. (emphasis and citations omitted); *see also* Mont. Code Ann. § 70-17-106 ("extent of a servitude is determined by the terms of the grant"); *Van Hook v. Jennings*, 983 P.2d 995, ¶ 12 (Mont. 1999) (same).

Here, as set forth in greater detail below (A) the plain language of the 1962 easement does not specifically exclude or limit public use of Robbins Gulch Road. Rather, the term "and its assigns" contemplates the agency's ability to allow public

16

access.  Indeed, (B) an explicit reference in the easement to Title 5400 of the

Forest Service Handbook ("FSH") reveals the easement provides public access.

Finally, (C) dozens of other easements utilizing this same language were executed

by the Forest Service in this area, in this same era, and all of them allow public

access.

> ### A. The 1962 easement does not explicitly exclude public access, but instead allows road use by Forest Service "assigns."

Nothing in the black letter of the 1962 easements explicitly excludes or

limits public use of the road.  The actual text of the easement states:



> That for and in consideration of    $100.00              , the receipt of which is
> hereby acknowledged, the party of the first part does hereby grant and convey unto
> the party of the second part and its assigns an easement and right-of-way for a road
> as now constructed and in place and to be re-
> constructed, improved, used, operated, patrolled, and maintained and known as the
>      Robbins Gulch                  road, Project Number   446          ,
>      60 foot               width on, over, and across the following described
> premises situated in the County of   Ravalli        , State of   Montana        ,
> to wit:
>
> S½NW¼SE¼, Section 17, T2N, R2OW, M.P.M.
>
> Containing  0.408 acres more or less.

Doc. 82-11 at 2.  The easement defines the "party of the second part" as "the U.S.

of America."  Critically, nothing in the granting language explicitly prevents public

access.

The deed creates a road easement, without limitation, providing access to the

appurtenant National Forest.  Where a right-of-way is appurtenant to an estate, it

may be used not only by the owner, but also "by all persons lawfully going to or from such premises, whether they are mentioned in the grant or not." *City of Missoula v. Mix*, 214 P.2d 212, 216 (Mont. 1950). In the absence of express restrictions in the grant, "all persons who can be regarded as having permission, express or implied, to enter on the dominant tenement, may use a way for the purpose of access to such tenement and of egress therefrom." *Id*. at 217; *see also Fruth Farms v. Vill. of Holgate*, 442 F. Supp. 2d 470, 477 (N.D. Ohio 2006) (reasonable use of access easement includes use by guests and invitees of dominant owner).

In *Cal-Neva Land & Timber Inc. v. U.S.*, 70 F. Supp. 2d 1151, 1156 (D. Or. 1999), the landowner brought a quiet title action claiming that an easement granted to the BLM "for the full use as a roadway by the Grantee, its licensees and permittees" did not allow public or recreational use. The court held the plain language of the easements contained no express restrictions on either the purposes or uses of the easements. *Id*. at 1159. The public could use the road for access to BLM land as implied licensees of the agency. *Id*. The court concluded:

> The purposes for which the BLM may invoke its right to access are unambiguously left unrestricted. In addition, the uses to which the BLM may put the property are also unambiguously left unrestricted. Because the easements at issue here are granted in general and unlimited terms, unrestricted reasonable use will be deemed to be

intended by the parties without the need for an affirmative recitation of every conceivable use that is allowed.

*Id*. at 1161 (cleaned up).

Here, as in *Cal-Neva*, the purposes for which the Forest Service may invoke its right of access are unambiguously left unrestricted in the 1962 easement. Doc. 82-11 at 2. The easement is granted in general and unlimited terms for a road to be "operated" by the Forest Service "and its assigns"—no additional granting language was required to extend access rights to the public. Where National Forest lands are open to the public, the Forest Service may allow the public to utilize the easement as "persons who can be regarded as having permission," even though public users are not explicitly identified within the easement. *Id*.; *City of Missoula*, 214 P.2d at 217; *Fruth Farms*, 442 F. Supp. 2d at 477.

## B. The FSH and federal regulations establish public access.

The 1962 easement was drafted in accordance with the 1958 version of FSH 5400 (specifically 5463.1), known as "the right-of-way acquisition handbook":

R1-5460-1 (Revised 12/61)

RIGHT-OF-WAY EASEMENT
(Reference FSH 5463.1)

THIS INDENTURE, MADE this 30ᵗʰ day of April , 1962 , between John E. Coultas and Ruth H. Coultas, his wife, owners of record, and John W. Coultas and Jean Coultas, his wife, holders of an unrecorded contract for sale dated September 22, 1958
of the County of Ravalli , State of Montana , grantor(s), party of the first part, and the United States of America, grantee, party of the second part, WITNESSETH:

Doc. 82-11 at 2 (highlighting added); SUF, ¶ 27.

Under Title 5400 ("Landownership Adjustments"), the FSH describes the

nature of access rights to be acquired on private roads constructed incidental to

National Forest timber sales:

> Generally, easements so acquired should be free of specific limita-
> tions on use or classes of users. Such easements enable the Forest
> Service to permit use by all classes of national forest users, includ-
> ing the general public when that is feasible and safe.

SUF, ¶ 28. The Handbook further notes:

> Restrictions on the purposes or use of the easement may be accepted
> if necessary and justified. However, such restrictions should, with
> some few exceptions, have time limits as a definite expiration date
> or the date when amortization of the agreed amount to be paid to or
> collected by the owner is completed. Under such an easement, use
> is restricted by the terms of the grant for the stipulated period. When
> the designated period expires, use by the public may then be permit-
> ted if possible and safe.

SUF, ¶ 29.

Here, the 1962 easement did not explicitly restrict eligible road users. In

lieu of such "specific limitations," the Forest Service was and is free to "permit use

by all classes of national forest users, including the general public." The 1962

easement did not specify any restrictions on its "purposes or use." The easement

did not establish time limits for such a restriction, and the Forest Service did not

pay reduced compensation for the easement to reflect such a diminished use right.

As determined by the United States' expert historian:

> In all cases when the government expended public funds on a road, it sought to obtain an unrestricted right-of-way and it also sought to obtain full right-to-use of such a road, which included its ability to determine the extent of public access on the road. The policy directed that the right-of-way easement be granted to the "U.S. and its assigns."

SUF, ¶ 30.

This interpretation is consistent with 36 C.F.R. 212.9(g)(3), which states that easements acquired by the United States "will not be subject to conditions, reservations, or covenants unrelated to the road use, or which seek or might tend to direct or limit policies and procedures for management of lands administered by the Forest Service." Again, the 1962 easement contains zero language restricting the right of public access.

Thus, because the 1962 easement did not expressly repudiate public access, the plain language of the easement encompasses such use.

**C.     Other easements using same language created public roads.**

The Forest Service used easement language identical to the 1962 easement dozens of times up and down the Bitterroot Valley in the same era. SUF, ¶ 31. The Forest Service used the same language from the same easement form: R1-5460-1. In each easement, the government acquired access for the U.S. "and its

assigns" along roads that became part of the National Forest System road network. In each easement, no express terms restrict the nature of the access right or prohibit any particular class of users—including the public. Consistent with FSH Title 5400, 36 C.F.R. 212.9(g), and Montana precedent, each of these easements therefore contemplated public use. In confirmation, each of these roads has provided, and continues to provide, public access to National Forest lands. SUF, ¶ 32.

Plaintiffs argue that other easements specifically conferred rights-of-way for "public … road and highway purposes," and the lack of such a reference in the 1962 easement means it conveyed something less than a public right of way. Doc. 81 at 21–22. But the easements Plaintiffs rely upon for this contention all date from 1952, when the agency used a different form easement. *Compare, e.g.*, Docs. 82-18, 82-19 (1952 easements using form M-I501-R1) *with* Doc. 82-11 (1962 easement using form R1-5460-1). Indeed, the 1958 Federal Highway Act superseded the previous authority by which the Forest Service acquired easements. SUF, ¶ 33. Thus, the easements are not comparable.

Moreover, the mere fact that a previous easement deed explicitly reserved "public highway" uses does not mean such a reservation is essential to create the use right. As set forth above, at least 35 other easements using the same language

and form as the 1962 Coultas easement (R1-5460-1) created public access roads. As Forest Service Realty Specialist Mark Petersen testified, Forest roads are managed the same regardless of whether the term "public highway" is included in the easement deed. SUF, ¶ 34. The "public highway" term was simply "the vernacular at the time" for the same bundle of rights. *Id*.

Similarly invalid is Plaintiffs' argument that too little consideration was paid for the 1962 easement for it to encompass public use. Doc. 81 at 24–25. As an initial matter, myriad factors apart from the nature of the transferred use rights influence valuation. SUF, ¶ 35; *Rexam Bev. Can Co. v. Bolger*, 620 F.3d 718, 732 (7th Cir. 2010) ("a general estimation of the property's valuation considers numerous intangible factors which could be weighed and combined in a wide variety of ways"). The location and value of the parcel, the utility of a road to the grantor, and whether access was already established are just a few of these factors. Thus, a rote comparison of dollars per acre is not indicative of rights conveyed.

However, even if it was, the consideration paid for the 1962 Coultas easement ($100 for .408 acres, or $245 per acre) is consistent with other Forest Service public access easements. SUF, ¶ 36. In short, the consideration paid for the 1962 easement does not show a lack of public access. To the contrary, the price paid tends to reinforce the fact that the 1962 easement included public access.

**D. Even if it was considered ambiguous, extrinsic evidence shows 1962 easement included public use.**

Documents conveying an interest in real property are governed by the rules of contract interpretation. *Lolo Minerals, LLC v. Phil Cascio, Jr.,* 2015 WL 12592790, at *2 (D. Mont. May 28, 2015). If the language of a contract is ambiguous, "a factual determination must be made as to the parties' intent in entering into the contract." *Id.* (citing Mont. Code Ann. § 70-20-202(1), (2) (courts may rely on "other evidence of the circumstances under which a deed was made or to which it relates to explain an extrinsic ambiguity")). Moreover, "where the grant or reservation of an easement is general in its terms, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to that particular course or manner." *Strahan v. Bush*, 773 P.2d 718, 720 (Mont. 1989) (cleaned up).

Here, if the Court finds the 1962 easement is ambiguous as to public use, then it may consider extrinsic evidence of the intended scope of use. The undisputed evidence shows that recreational public access occurred on Robbins Gulch Road before and after the 1962 easement, with the knowledge and acquiescence of the landowners. Similarly, grazing permittees used the road to access Forest Service pastures, negating Plaintiffs' assertion that the letter from Forest Supervisor Andersen defined the intended limits of the easement.

**1. Public access occurred on Robbins Gulch Road before and after the 1962 easements.**

David Coultas—grandson of John E. and Ruth Coultas, who granted the 1962 easement—grew up on his grandparents' ranch, which encompassed Robbins Gulch Road, from 1952 to 1972. SUF, ¶ 37. He described how Robbins Gulch Road was used during that time:

> [G]rowing up on Robbins Gulch Road, everyone, including but not limited to my family and I, went hunting up Robbins Gulch Road. These were just regular members of the public, and not people my family or I had invited to use the road. The easement on Robbins Gulch Road was just an open easement, which allowed the public to go in and hunt elk or otherwise access the National Forest.

SUF, ¶ 38. This is the only direct evidence on the nature of public access before, during, and after the 1962 easement. Plaintiffs lack any evidence disputing this firsthand account—let alone from the family that actually granted the original easement—that from 1952 to 1972 the public openly used Robbins Gulch Road to access National Forest lands.

If the Court deems the 1962 easement to be ambiguous, this 20-year stretch of public access (both before and after the grant) clearly constitutes "an exercise of the right, with the acquiescence and consent of both parties." *Strahan*, 773 P.2d at 720. David Coultas and his family knew the public was using Robbins Gulch Road to access National Forest. The public knew—they were using the road. *See*

SUF, ¶¶ 7–20. Even local teenagers knew they could use Robbins Gulch Road to access National Forest for "beer parties." SUF, ¶ 39. The Forest Service also knew: as noted above, agency policies and regulations required this easement to include public access, and Forest Service maps depicted it as such. *See* Section I(A) *supra*.

The accounts of David Coultas, Lori Conner, Dalton Christopherson, Laura Lindenlaub, Ric Brown—even Plaintiffs' own testimony—represent compelling extrinsic evidence of what the parties intended when they entered into the 1962 easement: public access was already occurring before the parties executed the easement, and it's continued unceasingly since. These ongoing uses, known to and accepted by the parties, "fix the right" of access in a particular course or manner. *Strahan*, 773 P.2d at 720. Consequently, even if the 1962 easement was ambiguous, its pattern of use clearly establishes that public access was intended.

### 2. Harold Andersen's letter did not limit road use.

Plaintiffs argue "the clearest evidence of the intention of the parties comes from the contemporaneous communication between the two sides." Doc. 81 at 23. In this communication, former Forest Supervisor Harold Andersen stated the "purpose" of Robbins Gulch Road was "timber harvest." *Id*. (citing Doc. 82-12).

Plaintiffs portray this statement as a limitation on use, but the contention fails for at least two reasons.

First, Plaintiffs incorrectly conflate the "purpose of road" with the permissible uses of the right-of-way. As is clear in the letter, Robbins Gulch Road already existed as of 1962. SUF, ¶ 40. This is consistent with witness testimony that public access was already occurring along Robbins Gulch Road well before 1962. The Forest Service simply needed to rebuild the road "to allow for the necessary road improvements required for heavy truck hauling." SUF, ¶ 41. This road improvement work was presaged in 1961 by the Robbins-Moonshine Timber sale. SUF, ¶ 42. Andersen wasn't limiting use by stating the agency intended to rebuild the road.

Second, contemporaneous road use was not limited to "timber harvest." As set forth above, public recreational access abounded throughout these years. Moreover, as Plaintiffs concede, Forest Service grazing permittees used Robbins Gulch Road to access the Medicine Tree grazing allotment. Doc. 81 at 24. Such grazing has occurred continuously since at least 1926. SUF, ¶ 43. Plaintiffs' theory—that Andersen's letter declared an intent to restrict use of Robbins Gulch Road to "timber harvest" only—is incorrect. Andersen could not have intended to

restrict road access to "timber harvest" because the Forest Service also used the road to provide access for grazing permittees.

Andersen's letter did not express a limitation on permissible road uses. It explained why the agency was rebuilding Robbins Gulch Road.

## III. The 1962 easement does not impose maintenance and/or patrol obligations on the Forest Service.

Finally, neither the facts nor the law support the notion that the Forest Service is obligated to maintain or patrol the road in the manner Plaintiffs contend.

With respect to maintenance, Plaintiffs ignore a key nuance—any purported duty under the law to maintain an easement is, in practice, up to the discretion of the dominant estate. *See, e.g.*, 25 Am. Jur. 2d Easements and Licenses § 72 (no duty to maintain an easement to "the standards the servient tenant may desire"); 28A C.J.S. Easements § 227 ("dominant tenement . . . not required to maintain or repair the easement for the benefit of the servient owner"); *Walker v. Boozer*, 95 P.3d 69, 74 (Idaho 2004); *DeHaven v. Hall*, 753 N.W.2d 429, 437 (S.D. 2008).

Thus, the baseline with respect to maintenance is not the servient estate's personal preferences, but the requirement that the dominant estate not unreasonably interfere with the enjoyment of the servient estate. *See id.*; Restatement (Third) of Property (Servitudes) § 4.13 (2000); *see also Koeppen v. Bolich*, 79 P.3d 1100, ¶ 52 (Mont. 2003) (citing *Laden v. Atkeson*, 116 P.2d 881,

28

884–85 (Mont. 1941)) ("One having an easement in another's land is bound to use it in such a manner as not to injure the rights of the owner of the servient tenement."). Thus, the Forest Service's "duty" to maintain Robbins Gulch Road is actually a discretionary *right* to maintain the road.

This is consistent with placement of the word "maintained" among the rights acquired by the agency through the 1962 easement, not as part of the consideration given for it. *See* Doc. 82-11 at 2. The consideration paid for the easement was $100 and did not include maintenance services. *Id*. Moreover, the 1962 easement provided that if the government abandoned Robbins Gulch Road, "the rights and privileges hereby granted shall cease and terminate"—there is no reference in the document to a continuing duty to maintain even after abandonment. *Id*.

Nor did the easement specify how the Forest Service was to maintain Robbins Gulch Road. This suggests the "benefit" of maintenance inured to the agency and its assigns, not the servient estate. The Forest Service exercises its right and benefit by maintaining Robbins Gulch Road at a Level 3, consistent with its status and use as a public road. SUF, ¶ 44. Were its use limited to access by the sole current stock grazing permittee, for example, the Forest Service would likely reduce the level of maintenance to a Level 1 or 2, i.e., something akin to a trail or two-track. SUF, ¶ 45.

Furthermore, while they might argue to the contrary in their brief, Plaintiffs' own testimony demonstrates that the level of maintenance provided by the Forest Service has not resulted in unreasonable interference. Plaintiff Stanton testified she would prefer if the government graded Robbins Gulch Road yearly and emptied cattle guards at points along the road beyond her property, but never alleged interference or damage. SUF, ¶ 46. Likewise, Plaintiff Wilkins testified he believes the Forest Service should "maintain the road of the homeowners" to a Level 3 (which it does), but otherwise did not testify that the agency's current level of maintenance burdened or damaged his property. SUF, ¶ 47. Even assuming the government has a duty to maintain the road, there is no evidence that maintenance activities are causing injury cognizable under the law.

With respect to patrolling Robbins Gulch Road, none of the above applies—there is no generalized duty under the law (and no citation from Plaintiffs otherwise) for a dominant estate to patrol an easement, regardless to which party's satisfaction the patrolling is carried out. The only document Plaintiffs point to as evidence of the Forest Service's purported duty to patrol is the 1962 easement, which as noted above includes "patrol" among the rights obtained by the Forest Service. Doc. 82-11 at 2; *see also Demetria Sifuentes v. U.S.*, 168 F.2d 264 (1st

Cir. 1948) ("the Government took not only a right of way but also the right to 'patrol' that way").  The alleged obligation is not a legally recognized duty.

## CONCLUSION

Based on the foregoing, the Court should grant the United States' motion for summary judgment.

DATED this 17th day of November 2023.

JESSE A. LASLOVICH
United States Attorney


/s/ John M. Newman
Assistant U.S. Attorney
Attorney for Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points, and contains 6,490 words, excluding the caption and certificates of service and compliance.

DATED this 17th day of November 2023.

/s/ John M. Newman
Assistant U.S. Attorney
Attorney for Defendant