IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

LARRY STEVEN WILKINS and JANE B. STANTON,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

CV 18–147–M–DLC

ORDER

This matter comes before the Court on cross motions for summary judgment filed by Plaintiffs Larry Steven Wilkins and Jane B. Stanton ("Plaintiffs") and Defendant United States of America ("the Government") (Docs. 80; 83). For the reasons herein, the Court grants summary judgment in favor of the Government.

## FACTUAL BACKGROUND

Although the Court and the parties are familiar with the facts of this case, the Court will restate the key background and procedure here for clarity. In 1962, Plaintiffs Wilkins and Stanton's predecessors-in-interest granted the United States an easement for Robbins Gulch Road. Located off Highway 93, just south of Connor, Montana, Robbins Gulch Road traverses private property for approximately one mile before entering the boundary of the Bitterroot National

Forest.[1] The deed conveyed to the United States a 60-foot easement "for a road as now constructed in place and to be re-constructed, improved, used, operated, patrolled, and maintained and known as the Robbins Gulch Road, Project Number 446." Plaintiffs each acquired their properties in 1991 and 2004, respectively.

## PROCEDURAL BACKGROUND

In 2018, Plaintiffs filed this action against the Government under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, alleging that the United States Forest Service ("Forest Service") exceeded the scope of its limited easement by failing to "manage . . . this road in accordance with the intended limited use of the road for U.S. Forest Service administrative purposes" and has instead managed the road in a way that has enabled public access, including posting signs that encourage public use. Plaintiffs also sought to confirm and enforce the Forest Service's obligation to patrol and maintain the road.[2]

In 2019, the Government moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, asserting that

[1] When the Court refers to Robbins Gulch Road hereafter, it will mean only that initial approximate 1-mile portion of the road which traverses private property.

[2] To the extent Plaintiffs' second claim sought to impose an affirmative action duty on the Forest Service to "maintain and patrol" Robbins Gulch Road, this allegation seems to take this claim outside of the QTA. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012). Nevertheless, having scoured Plaintiffs' complaint and finding no allegation that the Forest Service failed to "patrol" or "maintain" against any threat other than public use, the Court does not find any inference of a stand-alone APA claim. The Court will therefore construe both claims under the QTA.

Plaintiffs' claims were barred by the QTA's 12-year statute of limitations. The Court agreed and dismissed the action pursuant to Rule 12(b)(1). *Wilkins v. United States*, 2020 WL 2732251, at *7 (D. Mont. May 26, 2020) (hereinafter "*Wilkins I*"). The Ninth Circuit affirmed in two bifurcated opinions: first, a memorandum disposition finding that Plaintiffs' claims were time barred; and second, a published disposition upholding the QTA's statute of limitations as jurisdictional. *See Wilkins v. United States*, 2021 WL 4200563 (9th Cir. 2021); *Wilkins v. United States*, 13 F.4th 791 (9th Cir. 2021) (overruled by *Wilkins v. United States*, 598 U.S. 152 (2023)). The Supreme Court granted certiorari on the second bifurcated issue—whether the 12-year time bar was jurisdictional—and reversed. *Wilkins*, 598 U.S. at 165. The Supreme Court held that the QTA's statute of limitations was a claims processing rule, not a jurisdictional limitation, and remanded for further proceedings. *Id*.

Now on remand, the parties seek summary judgment on the issue of whether the Government's easement permits public use on Robbins Gulch Road and the nature of the Forest Service's obligations under the easement. (Docs. 81, 84.)

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the

documentary evidence permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *N.W. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Where parties submit cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must still determine whether disputed issues of material fact exist, and it may not grant summary judgment if there are any genuine issues as to material facts. *Id.* at 1136.

## DISCUSSION

Plaintiffs seek quiet title to confirm the scope of the 1962 easement for Robbins Gulch Road (Count I) and to confirm and enforce the Forest Service's obligations under the 1962 easement (Count II). *See* 28 U.S.C. §§ 2409a; 1346(f). Plaintiffs move for summary judgment on both counts, arguing that they have standing under Montana law, the easement is limited in scope, and the Government is equitably estopped from raising the statute of limitations as a defense. (Doc. 81 at 15.) The Government similarly moves for summary judgment on both counts, but counters that Plaintiffs' claims are time barred or, in the alternative, that they fail on the merits. (Doc. 84 at 10, 23.)

## I. Plaintiff' Property Interest

The QTA requires that Plaintiffs' Complaint "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d). Plaintiffs must, therefore, "claim a property interest to which title may be quieted." *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915 (8th Cir. 2001). Unless Plaintiffs have met this requirement, the United States' sovereign immunity has not been waived and this case must be dismissed for lack of subject matter jurisdiction. *Mills v. United States*, 742 F.3d 400, 406 (9th Cir. 2014).

Here, Plaintiffs maintain that they have a property interest to which title may be quieted because, as owners of land adjacent to Robbins Gulch Road, they are presumed to own to the center of the road under Montana law. *See* Mont. Code Ann. § 70-16-202. The Court is not aware of, nor do Defendants present, any evidence to overcome this presumption. *See McPherson v. Monegan*, 187 P.2d 542, 543–45 (Mont. 1947). Plaintiffs have therefore provided competent proof that they have a property interest to which title may be quieted.

## II. Whether Plaintiffs' Claims are Time Barred

### A. Law of the Case

The Government argues that because *Wilkins I* and the Ninth Circuit previously determined that the QTA's statute of limitations had expired, reconsideration of this issue is barred by the doctrine of the law of the case. (Doc. 90 at 12.) The doctrine of the law of the case seeks to "promote judicial finality," *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995), and as such, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). The doctrine is not a mandatory limitation on a tribunal's power, but rather serves as a guide to judicial discretion. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

As stated above, the Ninth Circuit affirmed *Wilkins I's* dismissal of Plaintiffs' claims pursuant to the QTA's 12-year statute of limitations, and the Supreme Court's decision did not disturb the lower Courts' findings with respect to the time bar. The question therefore becomes whether a finding on a motion to dismiss for lack of jurisdiction informs the analysis on cross motions for summary judgment. In *Leibel v. City of Buckeye*, the court observed that because Federal Rule of Civil Procedure 12(b)(6) and Rule 56 command different standards, denial

of a motion to dismiss does not constitute the law of the case for purposes of summary judgment. 556 F. Supp. 3d 1042, 1057 (D. Ariz. 2021).

Although *Leibel* it not precisely on point—it pertains to a motion to dismiss under Rule 12(b)(6) and not Rule 12(b)(1)—the Court nonetheless finds it instructive. Like Rule 12(b)(6), motions to dismiss under Rule 12(b)(1) and motions for summary judgment under Rule 56 are analyzed under different standards. One of these differences is that the court may consider extrinsic evidence when construing a motion to dismiss for lack of jurisdiction. *Kingman Reef Atoll Inv.*, 541 F.3d 1189, 1195 (9th Cir. 2008). Accordingly, the prior decisions "do[] not automatically constitute law of the case at this stage." *Leibel*, 556 F. Supp. 3d at 1057.

*Leibel* went on to note, however, that a court's prior ruling may be applied as the law of the case where the facts presumed true at the motion to dismiss stage are proven true at summary judgment. *Id.* at 1057–58. Indeed, when faced with motions for summary judgment on remand, the Ninth Circuit has observed that the law of the case may be applied where the record reveals no new evidence or no dispute of material fact, "the resolution of which might change the law applied by the appellate court." *Pubali Bank v. City Nat. Bank*, 777 F.2d 1340, 1342 (9th Cir. 1985). The Court must therefore determine whether Plaintiffs have presented new

evidence or whether the facts relied upon at the Rule 12(b)(1) stage are in dispute; if not, *Wilkins I* and the Ninth Circuit's decision become the law of the case.

**B. *Wilkins I* and the Ninth Circuit's Decision**

The QTA's statute of limitations requires Plaintiffs to bring a case "within twelve years of the date upon which [the claims] accrued." 28 U.S.C. § 2409a(g). Accrual occurs "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Id*. In *Wilkins I*, the Court found that "Plaintiffs' claims likely accrued sometime in the 1970's, [but] at the latest, on May 3, 2006," and were time barred as a result. 2020 WL 2732251, at *9.

In so concluding, the Court relied first on a series of historic Bitterroot Forest maps dating from 1950 to 2005. The Court observed that, in 1950, the regional map "depicts Robbins Gulch Road as a non-system road in good motor condition that connects Highway 94 before dead ending within the Bitterroot National Forest." *Id*. Then, in 1964, the Forest Service issued a map "depicting Robbins Gulch Road as Forest Road 446." *Id.* The Court noted that although a numbered designation does not necessarily mean the road is open to the public, Forest Service maps published in 1972, 1982, and 1993 displayed Robbins Gulch Road as an "improved road" as opposed to a road "with restrictions—inquire [at the] local Forest Service Station." *Id.*

Those maps, the Court opined, "tell a clear story—the Forest Service has been informing the public since, at least, 1972 that it may access the Bitterroot National Forest by using unrestricted road 446." *Id*. The Court observed that "the public heard this message and has been using the road as a public access route since that time." *Id.* Finally, the Court looked to a May 3, 2006, road closure and accompanying signage, which "expressly exclud[ed] the public" and communicated that the Forest Service "viewed the road as [otherwise] *open* to the public." *Id.*

Subsequently, in *Wilkins*, the Ninth Circuit affirmed that the Forest Service historical maps, "[t]ogether with the historic public use of the road…should have alerted a reasonable landowner of the government's view regarding public access of the easement more than twelve years before Appellants filed suit." 2021 WL 4200563, at *2. The Forest Service's temporary closure of Robbins Gulch Road in 2006, the Circuit noted, "was consistent with this understanding." *Id.*

### C. Whether there is a Dispute of Fact as to when Plaintiffs' Claims Accrued

Plaintiffs argue that the historical maps do not depict Robbins Gulch Road as open to the public, emphasizing the Forest Service's acknowledgment of the "confusing" nature of the pre-2007 maps. (Doc. 87 at 9–11.) Plaintiffs further contend that the Forest System Roads fall into two categories: Administrative

National Forest System Roads and public National Forest System Roads. (Doc. 87 at 10.) Only the latter, Plaintiffs assert, are open to public use. (Doc. 87 at 10.)

Plaintiffs fail to proffer any evidence rendering the facts relied upon in *Wilkins I* and the Ninth Circuit's decision in dispute. Rather, the undisputed facts show that in 1972, 1981, and 1993, the Forest Service presented Robbins Gulch Road as an "improved road", in contrast to several other roads characterized as "road[s] or trail[s] with restrictions—inquire at the local forest service station." (Doc. 85 ¶ 1, 85-1, -2, -3, -4, -5, -6.) Furthermore, in 2005, the Forest Service published a visitors map of the Bitterroot National Forest. The map was designed to help visitors "travel safely" and use the area lawfully. The map depicted restricted roads by a lettered system; Robbins Gulch Road was again not listed as having any user restrictions. (Doc. 85-6.) Finally, the pre-2007 maps upon which Plaintiffs rely pertain to motorized—not public—use. (*See* Doc. 82 ¶ 56, 82-37 at 41.)

"The question is whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land." *Shultz v. Dep't of Army, U.S.*, 886 F.2d 1157, 1160 (9th Cir. 1989). These historical maps have been available to the public for decades—indeed, Wilkins testified that he was aware of historical maps of the Bitterroot National Forest—and are more than

sufficient to place a reasonable landowner on notice of the Government's adverse interest. (Doc. 85-7 at 123:12–14, 124:3–18.)

When confronted with the above evidence in *Wilkins I*, this Court concluded that the maps "tell a clear story—the Forest Service has been informing the public since, at least, 1972 that it may access the Bitterroot National Forest by using unrestricted road 446." 2020 WL 2732251, at *9. The evidence in the record remains the same. Accordingly, this Court and the Ninth Circuit's finding that Plaintiffs' claims accrued prior to August 23, 2006, [3] is subject to the doctrine of the law of the case, unless an exception applies.

**D. Application of the Law of the Case**

The law of the case generally precludes reconsideration of an issue unless the court finds that one of the following exceptions exist: "(1) the first decision was clearly erroneous; (2) there has been an intervening change in the law; (3) the evidence presented on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *Thomas*, 983 F.2d at 155. Absent an exception, the court's failure to apply the doctrine of the law of the case "constitutes an abuse of discretion." *Id*. The Court will consider each exception in turn.

[3] Plaintiffs filed their Complaint on August 23, 2018. (Doc. 1.) Therefore, to be timely, their claim must not have accrued prior to August 23, 2006.

First, *Wilkins I* was affirmed by the Ninth Circuit's first bifurcated opinion—which, as noted, found that "[t]ogether with the historic use of the road, the historic maps should have alerted a reasonable landowner of the government's view regarding public access of the easement more than twelve years before Appellant's file suit"—and was left unaddressed by the Supreme Court. *See Wilkins*, 2021 WL 4200563; *Wilkins*, 598 U.S. 152 (2023). In consideration of the above, the Court cannot say that the prior decision was clearly erroneous.

Second, although the Supreme Court has clarified that the QTA's statute of limitations is a non-jurisdictional claims processing rule, the law with respect to whether QTA's time bar has expired remains the same. *Wilkins*, 2021 WL 4200563, at *2. Lastly, the Court has little trouble concluding that the final two elements are inapplicable. Discovery closed long ago, and neither party has sought to provide any additional evidence; moreover, there is no indication from either party that a manifest injustice will result because of the Court's ruling. Therefore, under the doctrine of the law of the case, the Court finds that Plaintiffs' claims are time barred by the QTA's 12-year claims processing rule.

## III. Equitable Estoppel

Plaintiffs contend that the Government is equitably estopped from raising the statute of limitations as a defense. (Doc. 87 at 19.) In *United States v. Beggerly*, the Supreme Court suggested equitable estoppel may be available in QTA cases.

524 U.S. 48, 49 (1998). In general, the plaintiff bears the burden of establishing "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011). However, "[a] party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence; even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989) (internal quotation marks and citation omitted).

The Court begins with the threshold requirement for estopping the Government. Although there is no single test to detect affirmative misconduct, it "does require an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Id.* (compiling cases). An intent to mislead is not required. *Id*. However, "[a] mere failure to inform or assist does not justify application of equitable estoppel." *Lavin v. Marsh*, 644 F.2d 1378, 1384 (9th Cir. 1981).

In cases where affirmative misconduct is found, there is generally ongoing misrepresentation on the part of the government. For example, in *Watkins*, the United States Army repeatedly misrepresented—over the course of fourteen

years—that a soldier was eligible for reenlistment, despite knowing of his ineligibility. 875 F.2d at 707–08. The court held this surpassed mere "misinformation provided by government agents" and amounted to an ongoing, affirmative misrepresentation on the part of Army officials. *Id.* at 708. The opposite is true in cases where misconduct is not found. For example, in *Lavin*, the plaintiff sought estoppel against the Army for denial of personal benefits, arguing that he was induced to reenlist with the promise of a pension. 644 F.2d at 1382. The court held that while the Army's conduct may have been negligent, there was no "pervasive pattern of false promises." *Id.* at 1383.

Like *Lavin*, the facts of this case do not justify equitable estoppel. Plaintiffs argue that the Government's actions amount to an affirmative misconduct because the Forest Service (1) acknowledged that the maps of Robbins Gulch Road were unclear and "needed to undergo the travel management process to determine what can and should be open to the public"; and (2) published an official notice indicating that its travel management plan would not permit public use on the Robbins Gulch Easement. (Doc. 87 at 21) (citing Docs. 82 ¶¶ 49, 56; 88 ¶ 65.) Plaintiffs' arguments find no support in the record. First, the travel management notice upon which Plaintiffs rely proposes only that parts of the road will be closed to motorized, and not public, access. (Docs. 82 ¶ 56; 85-6; 82-36 at 24.) Notably, this portion of the road does not include the Robbins Gulch Easement. (Doc. 85-6.)

Similarly, the agency's statements regarding the "confusing" nature of the maps again pertains to motorized, and not public, use. (Doc. 82 ¶ 59.)

Plaintiffs also rely on a 2007 conversation between then-District Ranger Chuck Oliver and Wilkins, wherein Oliver allegedly stated that "the travel management process would resolve any issues with public use on the Easement because the public would not be allowed to use the easement." (Doc. 87 at 20) (citing Doc. 82-34 at 111:6–116:7.) Defendants maintain, on the other hand, that Oliver only "suggested [Wilkins] work through the travel management process with the idea team" and allege that he never made the above representations. (Docs. 90 at 11; 82-32 at 38:11–25.)

Although the Government disputes Plaintiffs' characterization of Oliver's statements, that dispute is immaterial. The facts of this case are readily distinguishable from the pervasive pattern of deception in *Watkins* where, year after year, the military repeatedly misinformed the plaintiff. Here, without more, the Court cannot say that Oliver's statements—even if true—justify estopping the Government. Furthermore, "before invoking the doctrine of estoppel," the Court must question "whether the citizen dealing with the government has acted diligently to protect his own interests." *Lavin*, 644 F.2d at 1384. Had Wilkins properly consulted the scoping document, he would have seen that the proposal did not close the entirety of Robbins Gulch Road to public use. (Doc. 82-36 at 24.)

Because there is no affirmative misconduct, it is unnecessary to consider the remainder of the test for applying estoppel against the Government. At any rate, the Court has already determined that the statute of limitations accrued "sometime in the 1970's"; tolling the statute based upon alleged misrepresentations made in 2007 would not change the outcome of this case. While the Court is sympathetic to Plaintiffs' concerns regarding public use on Robbins Gulch Road, it nonetheless finds that the statute of limitations has run, and the Government cannot be estopped from asserting it as a defense.

## CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. 83) is GRANTED, and Plaintiffs' Motion for Summary Judgment (Doc. 80) is DENIED.

The Clerk of Court is directed to enter judgment by separate document.

DATED this 5th day of November, 2024.

Dana L. Christensen, District Judge
United States District Court